GARFIELD AND PROCTOR COAL COMPANY *vs.* FITCHBURG RAILROAD COMPANY.

Suffolk.  March 6, 1896. — May 21, 1896.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Damages for Delay in Discharging Cargoes from Vessels sent to the Defendant's Wharf — Reasonable Time — Defence that the Plaintiff might have gone elsewhere — Waiver.*

The owner of certain cargoes of coal caused the vessels containing the same to be sent to a railroad wharf for discharge, and the railroad company indorsed the date of the arrival of the vessels upon the bills of lading which were presented to the agent of the railroad company at the wharf, and the vessels thereupon waited at the wharf their turn for discharge.  *Held*, in an action to recover damages for delay in discharging the cargoes, that there was an implied agreement by the railroad company to discharge the plaintiff's vessels, and that this agreement was to be performed within a reasonable time.

A contractor, by taking what he can get under his contract when he can get it, no more necessarily and as matter of law waives a claim for damages for failure to perform on time than he necessarily waives a defect of quality by accepting goods.

CONTRACT, to recover damages for delay in discharging certain cargoes of coal from vessels sent to the defendant's coal wharf in Boston by the plaintiff, in November and December, 1893, to be discharged and shipped by the defendant in cars over its road to customers of the plaintiff.  At the trial in the Superior Court, without a jury, before *Hammond*, J., it appeared in evidence that the coal was shipped from Norfolk to Boston by six different schooners, the plaintiff receiving bills of lading therefor ; that the practice was for the master of a vessel to present his bill of lading to the defendant's agent at the wharf, who then entered the name of the vessel and the date of its arrival in a book kept for the purpose, and indorsed a memorandum thereof on the bill of lading, which he handed back to

the master; that the vessel would then wait at the wharf for its turn to go to the discharging wharf, if there were other vessels ahead of it; that the defendant had three sets of apparatus at its wharf for discharging coal from schooners, called "masts" and "gaffs," and at the time when the schooners bringing the plaintiff's coal arrived one was not in working order, and was not put in order during the period when the six schooners were discharged; that on the arrival of each of the schooners at the defendant's wharf, the master presented the bill of lading to the defendant's agent in charge, who indorsed the date and time of the vessel's arrival upon it, in accordance with the usual custom, entered the vessel's name and date of arrival in his book, and returned the bill of lading to the master, and that thereupon the several vessels waited at the wharf, in the usual manner, for their turn to be discharged; that the defendant gave the plaintiff no notice that it would not discharge the coal within the time required by the bill of lading to avoid demurrage, or that there would be any delay in the discharge; that the dates of the arrival of the several schooners at the wharf, the amount of coal they carried, the date when their discharge began, the date of its completion, and the amount of demurrage incurred and paid by the plaintiff, were all given in a table; that the usual time that vessels required for discharging coal at the wharves in Boston was within the time allowed by the provisions of the bill of lading, and that this provision was contained in all bills of lading of coal arriving at the wharf at Boston, and was well known to the defendant; that at about the time of the arrival of the first of the six vessels in question the plaintiff called the attention of the defendant's agent to the fact that part of the defendant's discharging apparatus was not in working order, and requested that it be put in order so that it could be used, which could have been done in two or three days; that the defendant's local freight agent said he would endeavor to have it done; and that vessels other than those of the plaintiff arrived at the defendant's wharf in Boston, in November and December, 1893, and there was conflicting evidence as to whether the defendant was guilty of negligence in not beginning to discharge the plaintiff's coal earlier than it did, and as to whether the defendant was guilty of negligence in not discharging the

plaintiff's coal more rapidly after the work on the plaintiff's vessels was actually begun.

The judge found that the plaintiff knew that one mast and gaff were not in a condition to be used at the time the vessels went there, and had not been in such condition for a considerable time prior thereto, and found that there was no negligence on the part of the defendant in discharging any of the plaintiff's coal after the discharge of each vessel had actually begun, and that the plaintiff knew from time to time the progress that was being made, and what vessels were entitled to precedence over its own vessels, and the time required to discharge such other vessels as the defendant was then working. The judge also found that the defendant worked with the same rapidity as it had for some time previous, and that the plaintiff knew it, and that the plaintiff was under no obligation to keep its vessels for discharge at the defendant's wharf, but could have taken them elsewhere for discharge, and ruled that the question whether there was unreasonable delay on the part of the defendant in beginning to discharge the plaintiff's vessels was immaterial; and the plaintiff excepted.

The plaintiff requested the judge to rule, that it was the duty of the defendant to discharge the vessels within a reasonable time after the vessels arrived and reported to the defendant; and that, if unable so to do, it was the duty of the defendant to notify the plaintiff of that fact. The judge refused so to rule; and the plaintiff alleged exceptions.

*E. W. Hutchins & H. Wheeler*, for the plaintiff.

*G. A. Torrey*, for the defendant.

HOLMES, J. The defendant concedes that there was an implied agreement that the defendant would discharge the plaintiff's vessels, and that by implication of law this agreement was to be performed within a reasonable time. The court are of opinion that such an agreement or a duty is shown as matter of law by the facts set forth in the bill of exceptions, although I cannot free my mind from hesitation in view of the opinion of the presiding judge that the plaintiff was at liberty to take its vessels elsewhere. We are of opinion further, that, the contract being established, there is nothing in the rest of the argument for the defendant.

The argument most pressed is that it appears on the facts that the plaintiff had no case. But it is stated in terms that there was conflicting evidence as to whether the defendant was guilty of negligence in not beginning to discharge the plaintiff's coal earlier than it did, and the court ruled that the question whether it was guilty of such negligence was immaterial. It would be a mere perversion of the bill of exceptions to say that, because the court found that there was no negligence in discharging the coal after the discharge had begun, therefore it found against the plaintiff as to the delay before the discharge had begun in the face of a direct refusal to entertain the question. It is equally inadmissible to assume that we have the evidence of the alleged earlier negligence in such form that we can pass upon its sufficiency as matter of law. It is certain that we cannot say that the time of the delay was reasonable, but we give no intimation, one way or the other, as to how the case strikes us on the question of negligence upon the facts disclosed.

The ruling seems to have been based on the finding from the facts set forth in the exceptions that the plaintiff was under no obligation to keep its vessels for discharge at the defendant's wharf, but could have taken them elsewhere for discharge. In view of what has been said above, we do not construe this as meaning that there was no undertaking or duty on the part of the defendant, but we understand it to mean that the plaintiff, if dissatisfied with the delay, was free to go elsewhere. The finding thus narrowed does not exonerate the defendant. It does not appear that the plaintiff was not warranted in waiting a reasonable time for the defendant to begin to unload. If the defendant did not begin within a reasonable time, it broke its contract; and if after that the plaintiff ought to have gone elsewhere, that only would affect the amount of damages, not the liability. But a jury might find that the plaintiff was justified in thinking that the most expeditious or most prudent course, after waiting so long, was to wait longer. We do not go into the considerations upon the two sides of that question, but it is not quite the same as would arise upon a grocer's failure to deliver a barrel of flour on time, where there would be no difficulty in hurrying him or in going to another shop.

It is suggested that the plaintiff waived its rights by allowing

its vessels to be discharged at a later time. No doubt cases occur in which parties going on with a contract after the time stipulated for performance show by their acts that they have modified the contract and enlarged the time. But a contractor, by taking what he can get under his contract when he can get it, no more necessarily and as matter of law waives a claim for damages for failure to perform on time than he necessarily waives a defect of quality by accepting goods. *Merrimack Manuf. Co.* v. *Quintard,* 107 Mass. 127.

*Exceptions sustained.*