DURCHMAN v. DUNN et al.

(District Court, S. D. New York. March 26, 1900.)

1. SHIPPING—DEMURRAGE—CONSTRUCTION OF CHARTER.

A provision, in a charter for carrying a cargo of lumber, that the cargo should be furnished "as fast as vessel can receive and properly stow same in suitable hours and weather," has reference to the hours and weather suitable for loading and stowage, and does not exclude time lost by reason of the lumber becoming wet in distant yards, and unfit for loading before it is forwarded to the ship.

2. SAME—EFFECT OF RELEASE.

A receipt in full for all claims under a charter executed by a master at the port of discharge on payment to him of only the freight due does not release the charterers from a claim for demurrage which was also made at the time by the master, and rejected, where the master was compelled to give such receipt in order to collect the freight, and did so under protest.

In Admiralty. Libel for demurrage.

Cowen, Wing, Putnam & Burlingham, for libelant.
Wilson & Wallis, for respondents.

BROWN, District Judge. The charter party of the ship Columbus for carrying a cargo of spruce lumber from Batiscan, Quebec, to Buenos Ayres, under which the demurrage for delay in loading is claimed, provided as follows:

"Cargo to be furnished at port of loading as fast as vessel can receive and properly stow same in suitable hours and weather, * * * Sundays and holidays excepted."

The ship was to be loaded with lumber at Batiscan, which was the usual place of anchorage for that region at the mouth of the Batiscan river. The ordinary course of business was that the lumber for loading was brought down on lighters from the lumber yards and mills from 12 to 14 miles up the river and transferred from lighters to the ship. The ship had nothing to do with the lighterage, or with the lighters, except to receive the lumber as brought by them. Loading commenced on the 8th of August, and as I find from the evidence was completed on Wednesday the 7th of September. Demurrage is claimed for the whole of August 29th, 30th, and 31st, for a half day each on September 1st and 2d, and for the whole of September 5th, at the rate fixed by the charter party of $137.76 per day. September 5th, however, was a holiday. I construe the charter as excepting that day from the obligation to load; and although it appears that work might perhaps have proceeded through stevedores at the ship, notwithstanding the exception in the charter party, I think the libelant cannot hold the respondents answerable for not working or supplying lumber on that day.

1. The defense as to the other days claimed is, that the lumber to be shipped was required to be dry, on account of the length of the voyage, and that through local storms up the river, the lumber which was previously sufficiently dried at the yards where it was piled up became so wet as to be unfit for loading. I must overrule this defense, as not within the exception of the charter. The charter required the loading to proceed "as fast as vessel can properly receive and stow same in suitable hours and weather." That plainly means suitable hours and weather for loading and for storage. That clause prevents counting hours or days when by reason of the weather at the place of loading the ship, the cargo could not be put on board or stowed without being injured. It certainly has no reference to the care and preservation of the lumber either at the distant yards, where it was piled, or on board of lighters by which the respondents were to bring it to the vessel at the place of loading. Under the clause quoted that was a risk lying wholly upon the respondents and not upon the ship. Scrutton, Charter Parties, § 42; Grant v. Coverdale, 9 App. Cas. 470; Davis v. Wallace, 3 Clif. 131, Fed. Cas. No. 3,657; Burrill v. Crossman, 16 C. C. A. 381, 69 Fed. 747, 751; Sorensen v. Keyser, 2 C. C. A. 650, 52 Fed. 163; McLeod v. 1,600 Tons of Nitrate of Soda (D. C.) 55 Fed. 528; Id., 10 C. C. A. 115, 61 Fed. 849; Empire Transp. Co. v. Philadelphia & R. Coal & Iron Co., 23 C. C. A. 564, 77 Fed. 919, 35 L. R. A. 623.

2. The respondents were in fact agents of John & Joseph Drysdale & Co. of Buenos Ayres, who were in fact the owners of the lumber. The charter was executed by the respondents in their own names, and the fact of their agency was not known until about the time the cargo was loaded, when the master became acquainted with that fact. The claim for demurrage was made before the ship sailed, but was resisted

by the respondents, and the ship sailed without payment of the demurrage. On delivery of the cargo at Buenos Ayres the demand for demurrage was renewed upon Drysdale & Co., who refused to recognize it, and the master being unable to collect his freight except by signing a release of all demands, finally executed a receipt in full of all claims under the charter, entering at the time a protest against the same, and receiving only the precise amount due for the freight. It is urged in defense that this transaction constituted an accord and satisfaction, and a release of Drysdale & Co., and consequently an estoppel against any further claim upon the respondents, who were but agents.

No doubt under the terms of the charter party as well as the bill of lading, which provided for the payment of freight and "all other conditions as per charter party," Drysdale & Co., both as principals and as consignees and owners were liable for the demurrage. See Burrill v. Crossman (D. C.) 65 Fed. 104; Id., 16 C. C. A. 381, 69 Fed. 747, and cases there cited. But the receipt in full, executed by the master under the circumstances above stated, did not in fact release Drysdale & Co. from their liability for demurrage. The receipt in full, as respects the claim for demurrage, was wholly without consideration. The payment made was not an accord and satisfaction of any unliquidated demand; it was simply a payment of the undisputed amount of the freight due for transportation. The case seems to be entirely within the decision of Association v. Wickham, 141 U. S. 564, 568, 12 Sup. Ct. 84, 35 L. Ed. 860. See, also, Ryan v. Ward, 48 N. Y. 204; Burrill v. Crossman, 33 C. C. A. 663, 91 Fed. 543; Garfield & P. Coal Co. v. Fitchburg R. Co., 166 Mass. 119, 44 N. E. 119. As Drysdale & Co., therefore, are not discharged, the libelant is not estopped from asserting his claim against the respondents under their express contract, and the remedy of the respondents over against Drysdale & Co., their principals, upon payment, will be unimpaired.

Decree for libelant for four days' demurrage, amounting to $551.04, with interest from September 8, 1898, and costs.