WILLIAM S. READ, *Appellee*, v. MARY R. LOFTUS *et al.*,
*Appellants.*

No. 16,531.

SYLLABUS BY THE COURT.

1. CONTRACT OF SALE—*Stipulation Concerning Title—Acceptance of Warranty Deed—Merger of Conditions.* Whether a stipulation in a contract for the sale and conveyance of real estate to deliver at a future date an abstract showing good title, satisfactory to the attorney for the vendee, is merged in a warranty deed and a mortgage given for the purchase money, executed cotemporaneously with the contract, is a question to be determined by an examination of the instruments and the situation, conduct and intention of the parties.

2. ———— *Same.* If the deed is accepted as performance of the conditions of the contract, it supersedes the stipulation. But if the parties agree and intend that the stipulation is to remain in full force and effect, it will not be considered as merged in the deed.

3. ———— *Possession and Improvements—Waiver of Stipulation as to Title.* Taking possession and improving the property is not conclusive evidence of a waiver of the stipulation of the contract as to title, especially where the improvements are made in pursuance of an express provision of the agreement.

4. ———— *Rescission —Laches —Possession —Reliance on Vendor's Promise to Perfect Title.* Where objections to the title shown by the abstract delivered in accordance with the contract are made by the vendee's attorney, in good faith, and, to obviate one of them, the vendor promises to prosecute an action to quiet the title, the continuance of possession by the vendee for a reasonable time in reliance upon such promises, without demanding rescission, is not such proof of laches as will necessarily defeat a rescission which was demanded after a refusal to take any step to remove the objections.

5. ———— *Rescission—Waiver of Stipulation as to Title.* The possession so taken and held, the making of improvements, and the delay in asking for rescission, so induced by the conduct and promises of the vendor, do not, as a matter of law, amount to a waiver of the stipulation relating to the title, but are proper matters to be considered in determining whether a rescission should be adjudged.

Appeal from Leavenworth district court; JAMES H. GILLPATRICK, judge. Opinion filed May 7, 1910. Affirmed.

### STATEMENT.

THIS action was brought by William S. Read, against Mary R. Loftus and Thomas J. Loftus, for the cancellation of a note and mortgage and the rescission of a contract under which they were given. This contract was made by letter, as follows:

"LEAVENWORTH, KAN., March 19, 1906.
"*Mrs. Mary R. Loftus and Thomas J. Loftus, Leavenworth, Kan.*:

"DEAR SIR—This will formally advise you that I will accept a warranty deed for real estate described as lots number twenty-two (22) and twenty-three (23) in block seventy-two (72), Leavenworth city, proper, and in settlement of same will deposit in hands of the cashier of the Leavenworth National Bank five hundred dollars ($500), to be paid to Mary R. Loftus on the deliverance of abstracts of title to above-mentioned property, abstracts to show good title, to be satisfactory to my attorneys, on or before November·25, 1906. In further consideration of the delivery to me of the above-mentioned deed, I will give upon said property a mortgage as security for the payment of nine thousand five hundred dollars ($9500), said amount to be paid in installments of five hundred dollars ($500), to be paid on the first day of December and the first day of June of each year until all is paid; the first payment to be made on December 1, 1906, provided that the above-mentioned abstract of title has been delivered and such abstract shows good and sufficient title in you satisfactory to my attorney. It being understood that I may have the liberty to pay an additional sum of one hundred dollars ($100) or any multiple thereof in advance of or at any time of any of the above-mentioned installments.

"Unpaid amount of above-mentioned principal to bear interest at the rate of five per cent (5%) per annum until paid.

"Insurance for the benefit of Mary R. Loftus will be carried on said property for such an amount as is represented in obligation unpaid.

"I also agree to make improvements, consisting of machinery, repairs on buildings, labor and material, to an extent of not less than three thousand dollars ($3000).

"Yours very truly,        WILLIAM S. READ."

The defendants accepted this offer by signing and indorsing the same, thus: "Accepted March 19, 1906.— Mary R. Loftus, Thomas J. Loftus."

A copy of this contract was deposited in the bank referred to therein, together with a certified check for $500, with direction indorsed upon the agreement as follows:

"I deposit herewith five hundred ($500) dollars, which you are to hold and pay over to Mary R. Loftus whenever she shall have complied with the terms and conditions of the within proposition.

WILLIAM S. READ."

From the findings of the court the following facts appear: A warranty deed and mortgage were executed about the same time that the contract was made. The intention of the parties was to leave these papers with the bank, but in the interval that elapsed before all the signatures could be obtained this was overlooked and the papers were delivered to the respective grantees and appear upon record, not, however, in pursuance of any new arrangement or understanding, nor with the intention to change or modify the conditions of the contract. An ice-and-cold-storage plant was upon the lots described in the contract, but was out of repair, with many parts missing, and it was necessary to repair, improve and overhaul the building and machinery to put the plant in running order. The plaintiff immediately took possession under the contract, repaired the building and made many improvements upon the plant, expending therefor the sum of $4456.49. He paid the first installment of interest, $237.50, due September 1, 1906, on the note accompanying the mortgage, and $190.30 for insurance, and performed the conditions of

the contract on his part. A few days before November 25, 1906, he requested the defendants to submit the abstract of title for examination, but it was not submitted until about December 1, 1906, when it was handed to the plaintiff's attorney for examination. On December 7 this attorney, after examining the abstract, refused to approve the title, and submitted written objections, as follow:

"(1)   There are three tax deeds on the property from the city to J. C. Douglas, issued March 28, 1873, July 19, 1880, and April 20, 1882, respectively.

"(2)   There is a deed from Higginbotham to Douglas, dated June 18, 1881.

"(3)   There is unpaid a sale certificate from the city to Thomas Quinn, for special taxes for year 1868. No deed issued on certificate.

"(4)   Sale of lots by county to W. D. Kelly for delinquent taxes, 1883.

"(5)   Special tax for paving and curbing Cherokee, in the sum of $119.07, not marked paid.

"(6)   A life estate in 1-6 said lots is outstanding in Dacotah S. Ryan.

"(7)   Mary R. Loftus was (apparently) the owner of a life estate . . . on March 20, 1906.

"(8)   The fee in remainder is outstanding in the heirs of the body, born and to be born of Kate V. Sheedy, Jeptha D. Ryan, Mary R. Loftus, Thomas C. Ryan, and Ethan B. Ryan.

"(9)   On March 20, 1906, the following suits were (and still are) pending in the district court of Leavenworth county, which may ripen into judgment liens on said lots: Fred Woolfe & Co. v. Mary R. Loftus et al.; Walter S. Gregg v. Mary R. Loftus et al.; James B. Welch v. Mary R. Loftus et al.

"(11)   The taxes of 1906 are unpaid."

These objections were made in good faith. Whatever title the defendants had in the premises came through the will of Mrs. Loftus's father, in which she and her brothers and sisters were devisees, and by conveyances made by the other devisees to her. The defendants promised to remove the objections, one of which was that a fee in remainder was outstanding.

As the defendants contended that such was not the effect of the will, they promised to have the question determined to the satisfaction of the examining attorney by a suit to quiet title or otherwise. The defendants then took back the abstract of title and have since retained it. Relying upon the promise to make the title satisfactory to his attorney, the plaintiff continued in the possession of the plant and continued to make necessary improvements thereon, but made no further payments on the consideration. The defendants left for New York, where they remained for the greater part of the following months, during which time there were negotiations between the parties looking toward a different contract or disposition of the property, but nothing resulted. The plaintiff did not intend to waive his objections to the title or to accept any title not satisfactory to his attorney, nor did the defendants rely upon any waiver, and, although inducing the plaintiff to believe that the title would be made satisfactory, they took no steps to do so and the defects were not removed. In the fall of 1907 the defendants gave notice that they would do nothing further with respect to the title. Thereupon, on October 5, 1907, the plaintiff served upon them a written notice of his election to rescind the contract because of their failure to comply with its conditions. The rental value of the premises, without the repairs and improvements made by the plaintiff from the time he began the operation of the plant until he gave notice of the rescission (a period of seventeen months), is $75 per month; with the improvements, the rental value is $150 per month.

Upon the foregoing facts a judgment was entered rescinding the contract, and for the cancellation of the note and mortgage upon the delivery to the clerk of a conveyance of the premises to Mary R. Loftus.

The court charged the plaintiff with the rent of the premises at $75 per month, credited him with the interest and insurance paid, and the sum expended for

repairs and improvements, and found that there was due to him $4109.29, which was charged as a lien upon the premises.

*James F. Getty, F. D. Hutchings,* and *D. F. Carson,* for the appellants.

*A. E. Dempsy,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: The defendants predicate error upon the orders overruling an objection to evidence under the petition, a demurrer to the evidence, and a motion to set aside the findings of fact. It is argued that the contract was merged in the deed and mortgage, and that the only remedy in case the title is defective or should fail is upon the covenants of the deed; also, that the plaintiff waived any right to rescission by long-continued delay. It is further urged that the amount allowed for improvements was excessive, and that the defendants were entitled to rent of the property as improved by the expenditures with which they are charged.

The principal question is whether the provisions of the contract concerning the title were waived by the acceptance of the deed. It is urged in support of the alleged merger that the contract was superseded and extinguished by the deed, and that all its stipulations were merged therein. That this is the effect of a deed when subsequently accepted in satisfaction of the conditions of an executory contract must be conceded. This conveyance, however, was made cotemporaneously with the contract, which contained provisions for the future delivery of an abstract showing a good title satisfactory to the plaintiff's attorney. No payment was made at the time; even the $500 deposited remained in the bank, to be delivered only when the abstract should be approved. The provision for an

abstract to be furnished in the future, and the clause requiring an expenditure of $3000 for improvements, indicate that the transaction was not considered or treated by either party as finally closed by the delivery of the deed and mortgage. In addition to this, the court found that these papers were delivered contrary to the intention of the parties, and not with any intention to waive or modify the terms of the agreement.

It was held in *Hampe v. Higgins,* 74 Kan. 296:

"A written contract for the sale of real estate is superseded and extinguished by a subsequent deed of conveyance between the same parties which covers in its provisions all of the stipulations contained in the contract." (Syllabus.)

In the opinion it was said:

"In our view the evidence furnished by the face of the two instruments and also the extrinsic circumstances shown indicate that the parties intended the deed as a complete settlement of all further controversy concerning the sale and conveyance of the land. The transaction was initiated by the contract of sale and closed with the deed." (Page 298.)

In this case the deed did not cover the stipulations contained in the contract, and the circumstances do not conclusively show, as they were held to do in that case, that the transaction was closed. On the contrary, both parties treated it as still open, and the contract as being in force. In various cases cited in support of the alleged merger it will be observed that the doctrine rests upon the acceptance of the conveyance as a performance of the contract. Thus it is said in section 850*a* of volume 2 of the second edition of Devlin on Deeds:

"The rule applicable to all contracts that prior stipulations are merged in the final and formal contract executed by the parties applies, of course, to a deed based upon a contract to convey. When a deed is delivered and accepted as performance of a contract to convey the contract is merged in the deed."

It was held in *Slocum v. Bracy*, 55 Minn. 249, where this question of merger was considered, that it is competent to prove by parol that the deed was not accepted as a performance of the contract. The court said:

"There would be a very clear distinction . . . between plaintiffs' merely accepting the instrument as a conveyance and their accepting it as performance of defendants' contract.

"We therefore think that it would have been competent for plaintiffs to have proved by parol the allegation of their reply that their acceptance of the deed as performance of defendants' contract was only conditional. Such evidence would not contradict the terms of the deed, or tend to prove that it was not to be operative as a conveyance according to its terms." (Page 253.)

It can not be said, as a matter of law, that the contract was merged in the deed. No inconsistency appears between the contract and the deed, and the provisions of the former were not necessarily superseded by the latter. (*Witbeck v. Waine,* 16 N. Y. 532; *Nothe v. Nomer,* 54 Conn. 326; *Close v. Zell,* 141 Pa. St. 390.) The court found that no merger was intended. It is insisted, however, that this finding is not supported by any evidence. The conduct of the parties was a proper matter to be considered, as well as the language of the instruments, and in addition to this there was the testimony of the plaintiff that it was agreed that the mortgage and the deed should remain in the bank, but that carelessly or unintentionally the exchange was made, instead of leaving them there as intended. In the light of this testimony and of all the circumstances we can not say that the finding is not supported by any evidence.

The question whether the plaintiff waived the objections to the title was clearly one of fact. The mere circumstance that he took and held possession of the property is not conclusive. Possession was expressly stipulated for in the contract, and his continuance in

holding it is explained by the repeated promises of the defendants to remove the objections. The nature of the remedy which they proposed, namely, a suit to quiet title, would necessarily require time, and a reasonable delay for that purpose should not be construed as a waiver until some act was done or notice given evincing an intention to refuse to comply with the promise. When such notice was given the plaintiff acted promptly, by. serving his notice of rescission, offering to reconvey the premises, and demanding .a return of the note and mortgage.

The court is not called upon to determine the validity of the objections made to the title. The parties by their contract agreed that the title should be made satisfactory to the plaintiff's attorney. This was not done. Objections which appear upon their face to be substantial were made, and were not removed, and a final refusal to obviate them was given. That they were made in good faith is found by the court. That such a stipulation is valid and will be enforced is not an open question in this state. (*Hollingsworth v. Colthurst,* 78 Kan. 455.) The plaintiff was not required to accept a title which he had been advised was defective, and incur the risk of litigation, expense and loss. He had provided against such hazards by a stipulation that the title should be satisfactory to his attorney.

Again, it is urged that there should be no recovery because the plaintiff failed to introduce the abstract in evidence. This was unnecessary. It was in the hands of the defendants, and it was not necessary for the court to examine it, for the sufficiency of the title was not in issue. It was only necessary to show that it had been examined by the plaintiff's attorney, and, in the absence of bad faith, his objections were sufficient.

The petition contained allegations that fraudulent

representations concerning the title had been made. As there was no finding of fact supporting these allegations it is argued that there can be no recovery. Notwithstanding these averments the cause of action was not for fraudulent representations, but for the failure to make title as provided in the contract.

Another contention of the defendants is that the evidence disclosed the fact that the plaintiff, before entering into the contract, consulted with an attorney concerning the condition of the title, and that he must have relied upon the advice of the attorney. It is sufficient to say that notwithstanding such consultation he made these stipulations with reference to the title. Whatever advice he may have received, he had a right to secure such guaranties and make such conditions as the other party was willing to concede.

It is contended that instead of allowing the *expenditures* made for improvements the court should only have allowed the *value* of the improvements, but this is not the rule in such cases. Upon the rescission of such a contract the party not in default is entitled to recover the necessary expenditures he has properly made upon the faith of the performance of the agreement by the other party. (*King v. Machine Co.,* 81 Kan. 809; 8 A. & E. Encycl. of L. 637, 638.) Especially should this be so in a case where the contract expressly provides that he shall make such expenditures. Besides, it is said in the argument for the defendants that "we are not controverting the amounts paid, but we are seriously controverting the question as to whether they went into repairs and improvements, or operating expenses, and we make our objections upon that ground." The amount expended for improvements and repairs was determined by the court, upon competent evidence, and the finding thereon can not now be disturbed.

Finally, it is urged that the court should have allowed rent for the property in its improved condition.

Manifestly this would be true if the defendants had been charged with interest upon the expenditures, but as they were not they should only recover the rent of the property as it was without the improvements.

That an agreement to purchase real estate may be rescinded where the vendor refuses or is unable to convey a merchantable title, as agreed, will not be controverted. The facts found by the court bring the case within the operation of this principle. The consideration had not been paid, except a little interest; the improvements made in pursuance of the agreement are upon the property of the vendor, and the rights of both parties were protected by the decree.

Finding no error in the proceedings, the judgment is affirmed.