64 P.(2d) 377

**CONTINENTAL LIFE INS. CO. v. SMITH.**

No. 4160.

Supreme Court of New Mexico.

Dec. 31, 1936.

Works & Bassett, of Amarillo, Tex., and A. T. Rogers, Jr., of Las Vegas, for appellant.

M. E. Noble, of Las Vegas, for appellee.

BRICE, Justice.

This suit was brought by appellee against appellant to recover on a note for $9,740.92, and to foreclose a mortgagee deed securing it. The appellant answered, claiming damages because of breach of a contract to convey the same and other real estate described in·the mortgage, made prior to the execution to appellant of a deed to the property, and the note and mortgage in suit; by reason of which it is claimed nothing is due on the note. By cross-action appellant sued to cancel the note and mortgage in suit and to recover damages for such breach, in excess of the amount due appellee on the note. Appellee demurred to the second amended answer and cross-complaint, which demurrers were sustained. Appellant refusing to further amend his answer, judgment was entered for appellee as prayed for in its complaint.

The demurrer admitted the allegations of fact in the answer that were well pleaded. With this in mind, we deduce from the voluminous pleadings of the appellant, the following essential facts upon which this case must be determined:

On the 17th of August, 1926, the appellant and appellee entered into a written contract, whereby appellee agreed to sell, and

the appellant to buy, approximately 13,000 acres of land in New Mexico for $40,000, to be paid as follows: $6,000 cash upon execution of the contract; $5,000 to be paid on January 1, 1927, and $2,500 to be paid each six months thereafter to and including July 1, 1932, and the balance of $1,500 on January 1, 1933. The appellant sold 5,000 acres of the land for $19,000; $16,000 of which was applied on his debt to appellee, and the land sold was released by appellee from the contract. Other payments were made (some in advance) so that on April 25, 1929, there was a balance of $9,740.92 due appellee on the purchase price.

In July, 1929, appellant entered into a binding contract with Earl J. Brennon and Thomas Brennon for a sale to them of 5,000 acres of the land remaining unsold, for a consideration of $23,500. A part of this consideration was the assumption of the balance of $9,740.92 due appellee. At that time, and until May 14, 1930, the Brennons were ready, able, and willing to carry out said contract, but on the latter date, because of the delay in closing the contract, hereinafter referred to, the Brennons gave written notice that they had exercised their right to cancel, and did cancel, said contract. The consideration which the Brennons had agreed to pay would have liquidated the balance due appellee and left a profit of $13,100 to appellant, together with 1,320.21 acres of specifically described lands unsold.

During all the time the contract was in effect, the appellant was not in default in any particular in its performance. On and before April 25, 1929, he had paid appellee all matured payments and a portion not matured, so there was due appellee on said date only $9,740.92.

The contract of sale from appellee to appellant, among other terms and covenants, provided:

" * * * on the first day of January 1929, provided there be no default of the terms of this contract, second party may demand, and first party, upon surrender of this contract to it for cancellation, shall then make its special warranty deed to the land above described, in favor of the party of the second part, provided, however, that upon making delivery of said special warranty deed, by party of the first part to second party, the second party shall execute and deliver a first mortgage, on the usual form, satisfactory to party of the first part, on all of the said realty, said mortgage to secure the payment of notes then to be executed and delivered by second party to first party, for the amount of all immature installments not paid at the time of delivery of deed as above mentioned, with accrued interest, if any, thereon, such notes to mature on the respective dates on which the deferred installments above noted would become due if such notes were not executed; such notes shall bear interest at the rate of six percent per annum from their respective dates until paid, 'interest payable semi-annually,' and if any interest or principal note be not paid when due, the same shall then bear interest at the rate of ten percent per annum until paid, both the notes and mortgage shall be made in favor of the party of the first part and such mortgage shall be

conditional also upon the performance of the other agreements of the ·party of the second part in this contract contained, regarding the payment of taxes and other liens. * * *

"The party of the second part further agrees that he will not assign this contract, nor any part thereof, nor interest therein without the written consent of the party of the first part."

The parties hereto and said Brennons agreed to close the Brennon sale in the following manner: Appellant and wife would make a quitclaim deed conveying the unsold acreage to appellee; then appellee would convey the same land to the Brennons, taking back from them their note in the sum of $9,740.92, due February 1, 1933 (the balance due appellee), secured by a mortgage on the land. That after the execution of these documents the Brennons would deed to appellant a specifically described 1,320.21 acres of the land, being the excess over the land they had bought. The maturity date of the note from the Brennons to appellee would be February 1, 1933, in consideration of appellant having paid some installments of· the purchase price in advance of their due date.

In pursuance to these arrangements, appellee wrote appellant a letter containing the following: "In accordance with your suggestion to Mr. Mays, and at his request, I am enclosing herewith a photostatic copy of form of Deed we will execute to the Brennons, when the mortgage papers and your Quit Claim Deed properly completed are forwarded to this office."

There was inclosed in this letter a photostatic copy of a proposed deed from appellee to the Brennons that complied in terms with the agreement.

After appellee had agreed to the Brennon sale, and to the manner of carrying it out, as stated, it arbitrarily demanded, as a condition to completing its part, that the wives of the Brennons join as makers of the note (which it had been agreed the Brennons would make) and in the execution of the mortgage securing it. This the Brennons refused to do, with the result of long delays while the Brennon contract was in effect.

In an endeavor to close the Brennon sale after appellee refused to carry out the agreement to convey to the Brennons, the appellant, joined by his wife, about February 17, 1930, executed a note for the balance due appellee and secured it by a mortgage on the unsold land, and sent them to appellee with the demand that they be accepted and the land deeded to appellant. Appellee agreed, and executed a deed to appellant for the unsold land; but held said papers until April 30, 1930, when it mailed them to appellee's attorney in Las Vegas, N. M. Acting under instructions from appellee, its attorney held said papers until January 27, 1931, long after the Brennon contract was canceled; at which time appellee's attorneys telephoned appellant's attorney that they were ready to place the deed and mortgage of record; to which appellant's attorney

consented, though neither he nor appellant had ever seen the deed. The defendant alleged further that there was an implied covenant in appellant's contract with appellee that appellee would execute a deed to the Brennons in a reasonable time after demand; and to appellant likewise after its refusal to carry out its agreement to convey the land to the Brennons, which appellee in each instance failed and refused to do. That if either had been complied with, the appellant would have closed the Brennon sale.

That at the time of the filing of this suit the land had so deteriorated in value that it was not worth the balance due appellee on the purchase price.

It is alleged in the answer and cross-complaint:

" * * * In this connection, this defendant further says and shows that no surrender of said contract or original notes between plaintiff and this defendant for cancellation was mentioned or required by plaintiff in connection with said Brennon deal or otherwise and that any such surrender for cancellation of said contract was by plaintiff waived and said contract retained and is now held by this defendant.

" * * * that said deed was not accepted by him in full satisfaction or discharge of all of the covenants and obligations resting on plaintiff under its said contract of sale to this defendant, but that same was only accepted as a conveyance of said remaining portion of said land to which deed plaintiff understood and alleges the fact to be that he was entitled to under the expressed termination (terms) of said contract, and he further in this connection especially denies that any of the other covenants or obligations of said original contract were merged into said deed except the covenant and obligation to make deed to said land and he further specially denies that he in any sense waived fulfillment of any of the other covenants or obligations of said contract or that there was any consideration for any such waiver and he further and specially said that he at no time intended to nor did he agree that said contract should be merged into said deed, note and mortgage, or that he at any time waived, agreed to waive, or intended to waive the breach of said original contract, or any of the covenants thereof, or that there was any consideration of any character whatsoever, for any such agreement to waive on his part."

The facts here set out are alleged both as a defense and as base for affirmative relief in the cross-complaint.

From the facts it may reasonably be inferred that had the appellee conveyed the property either to the Brennons or the appellant within a reasonable time after demand, the sale to the Brennons would have been accomplished and appellants saved from a loss of several thousand dollars, and that appellee's refusal to make a deed to the property as the contract provided was a willful disregard of its obligation. It had full knowledge of the Brennon contract and the desire of appellant to close it; and no reason appears thus far why it could not

have delivered the deed in a few days after demand instead of the many months wasted without the slightest justification, before delivery.

The cross-action and counterclaim is for special damages resulting from the loss of the bargain with the Brennons. While courts differ as to the measure of damages in such cases, no question in that regard is raised here, and we do not pass on it. See 66 C.J. title "Vendor and Purchaser," §§ 1703 to 1712, inclusive, and 27 R.C.L. § XVI, p. 630, title "Vendor and Purchaser," and cases cited.

The question is whether a right to recover damages for the breach of a contract to convey real estate at a particular time is waived or lost by the acceptance of a deed subsequent to the accrual of a right of action for such breach.

The appellee contends that the covenant to convey title and accept a note and mortgage for the balance due on the purchase price, as stated in the facts deduced, was merged in the deed which appellant accepted after a right of action had accrued for the breach.

■ The general rule with regard to merger in such cases was stated in Norment et ux. v. Turley et al., 24 N.M. 526, 174 P. 999, 1000 as follows: "It is a well-established rule of law that prior stipulations are merged in the final and formal contract executed by the parties, and this rule applies to a deed or a mortgage based upon a contract to convey. When a deed is delivered and accepted as performance of the contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained in the contract, the deed alone must be looked to to determine the rights of the parties. Devlin on Real Estate, § 850a. The rule is followed in practically all the cases." Also see annotation in 84 A.L.R. 1008 et seq.

■ An exception to this general rule is likewise stated in the Norment Case in the following language: "There is an exception to the rule stated, which is that the contract of conveyance is not merged upon execution of a deed where under the contract the rights are conferred collaterally and independent of the deed; there being no presumption that the party in accepting the deed intends to give up the covenants of which the deed is not a performance or satisfaction. Where the right claimed under the contract would vary, change, or alter the agreement in the deed itself, *or inheres in the very subject-matter with which the deed deals, a prior contract covering the same subject-matter cannot be shown as against the provisions of the deed.*" Also see annotation, 84 A.L.R. division IV, p. 1017 et seq.

■ It is held by some courts of high standing that where preliminary contracts for the sale of real estate have been made and the covenants and stipulations are such that the mere delivery of a deed is not a full performance, then it is a question of intention, to be determined from the deed, or if not contained therein, then from other evidence, whether such stipulations have been

surrendered. If covenants regarding the same subject-matter, consistent or incon- sistent, with those in the contract appear in the deed, they are conclusively presumed to have merged therein; but if the deed contain no evidence of intention on the subject, then the question is open to other evidence to determine such intention, and in the absence of evidence there is no presumption that either party intended to waive stipulations in the contract by the delivery or acceptance of a deed. This is the rule in New York, as will be seen from the oft cited case of Morris et al. v. Whitcher, 20 N.Y. 41, from which we quote the following:

"Again it is said that an executory agreement for the sale of lands is always satisfied and performed when the conveyance comes to be made. It needs no argument to prove that a simple covenant to convey is performed by a conveyance. The obligation being thus satisfied, that is the end of it. But it is just as plain, both in common sense and in law, that covenants which relate to other things than a mere conveyance are not thus performed or satisfied. Especially it would seem to be a self-evident proposition, that the performance by the vendor of his antecedent covenant to convey is not a performance of a different covenant, contained in the same instrument on the part of the vendee. * * *

"In all cases then, where there are stipulations in a preliminary contract for the sale of land, of which the conveyance itself is not a performance, the true question must be whether the parties have intentionally surrendered those stipulations. The evidence of that intention may exist in or out of the deed. If plainly expressed in the very terms of the deed, the evidence will be decisive. If not so expressed, the question is open to other evidence, and I think in absence of all proof there is no presumption that either party, in giving or accepting a conveyance, intends to give up the benefit of covenants of which the conveyance is not a performance or satisfaction."

The rule adopted in the Norment Case, supra, we believe to be supported by the weight of authority. We state it more in detail, as follows:

■ In the absence of fraud, mistake, etc., the following stipulations in contracts for the sale of real estate are conclusively presumed to be merged in a subsequently delivered and accepted deed made in pursuance of such contract, to wit: (1) Those that inhere in the very subject-matter of the deed, such as title, possession, emblements, etc.; (2) those carried into the deed and of the same effect; (3) those of which the subject-matter conflicts with the same subject-matter in the deed. In such cases, the deed alone must be looked to in determining the rights of the parties.

■■ But where there are stipulations in such preliminary contract of which the delivery and acceptance of the deed is not a performance, the question to be determined is whether the parties have intentionally surrendered or waived such stipulations. If such intention appears in the deed, it is de-

cisive; if not, then resort may be had to other evidence.

The following cases are pertinent: Caveny v. Curtis et al., 257 Pa. 575, 101 A. 853; City of Bend v. Title & Trust Co., 134 Or. 119, 289 P. 1044, 84 A.L.R. 1001; Woodson v. Smith, 128 Va. 652, 104 S.E. 794; Vermont Marble Co. v. Eastman, 91 Vt. 425, 101 A. 151; Davis v. Lee, 52 Wash. 330, 100 P. 752, 132 Am.St.Rep. 973; Disbrow v. Harris, 122 N.Y. 362, 25 N.E. 356; Carey et al. v. Walker et al., 172 Iowa, 236, 154 N.W. 425; Christiansen v. Intermountain Ass'n of Credit Men, 46 Idaho, 394, 267 P. 1074; Goodspeed v. Nichols et al., 231 Mich. 308, 204 N.W. 122; Reid v. Sycks, 27 Ohio St. 285; Blake-McFall Co., Respondent, v. Wilson et al., 98 Or. 626, 193 P. 902, 14 A.L.R. 1275; Brownback v. Spangler, 101 N.J.Eq. 388, 139 A. 524; Read v. Loftus, 82 Kan. 485, 108 P. 850, 31 L.R.A.(N.S.) 457, and note; Kessler et ux. v. Troast et ux., 101 N.J.Eq. 536, 138 A. 371; 27 R.C.L. 532.

The authorities may perhaps be reconciled by a determination of what are "collateral stipulations." If the stipulation has reference to title, possession, quantity, or emblements of the land, it is generally, but not always, held to inhere in the very subject-matter with which the deed deals, and is merged therein. Bull v. Willard, 9 Barb.(N.Y.) 641; Winn v. Taylor, 98 Or. 556, 190 P. 342, 194 P. 857; Van Hee v. Rickman et al., 109 Or. 357, 220 P. 143.

We now come to the principal question: Did the stipulation to convey the property at a stated date, under conditions duly performed by appellant, merge in the deed?

Strictly speaking, a covenant to convey does not merge, but terminates as a completed transaction upon delivery and acceptance of a deed. It is never breached if a deed is accepted at any time. But a stipulation to deliver a deed at a certain time, or within a reasonable time, or upon a contingency, is either breached before the delivery of a deed or falls with such delivery and acceptance. It was never intended to survive the deed except as a basis of an action for damages, and this appears from its terms. Such stipulation could not merge in a deed, but it may be intentionally waived or surrendered.

There are but few cases on the question and these uphold our conclusion. The court in Houston & T. C. Ry. Co. et al. v. Wright, 15 Tex.Civ.App. 151, 38 S.W. 836, 837, had the identical question to decide. That court concluded that the acceptance of a deed was not a waiver of damages.

The railway company contracted to sell Wright certain land at $2.50 an acre; $1,280 was paid on the land and the remaining $320 was to be represented by a vendor's lien note to be executed when the deed was delivered, which was to be within a reasonable time, alleged to be thirty days. After an unreasonable delay the deed was delivered and accepted by the purchaser, and the vendor's lien note executed. The court said: "According to the further contention of the appellee, he contracted in May, 1893, for the sale of the section to his brother W. C. Wright,

at the price of $7.50 per acre. This contract he was unable to consummate, on account of the fact that the defendants had failed to execute a deed in accordance with the agreement of Napier. It is further contended by the appellee that the land had decreased in value to such an extent as not to be worth more than $3,200 at the date of the execution and acceptance of the deed. The record shows that the transaction with W. C. Wright was made the basis of the plaintiff's recovery; and the court charged the jury, in effect, that the measure of damages was the diminished value of the land at the time of the execution of the deed, with reference to the amount which would have been realized had the sale to W. C. Wright been completed."

The court held that there was nothing to show that the contract was made with reference to the special conditions rendering the damage claimed the natural and probable result of the breach, and cited Missouri, K. & T. Railway Co. v. Belcher, 89 Tex. 428, 35 S.W. 6, and Tynan v. Dullnig (Tex.Civ. App.) 25 S.W. 465, for the correct measure of damages. The court further stated:

"We also overrule appellants' proposition to the effect that the final acceptance of the deed should be regarded as a waiver of damages previously and otherwise legitimately accruing from a breach of the contract. Had the deed not been executed, the vendee could have sued for a specific performance and for damages in the same action. Pom. Cont. §§ 469, 481. The execution of the deed avoided the necessity of a suit for specific performance. If, however, damages had been sustained in the meanwhile, no reason is perceived why an action would not lie for their recovery, especially under the liberal system of procedure prevailing in this state.

"Other assignments criticising the charge need not be considered. The judgment is reversed, and the cause is remanded."

We copy the following from 66 C.J. title "Vendor and Purchaser," § 1652, p. 1552: "Execution and acceptance of a deed at a time subsequent to that fixed for that purpose by the sale contract entitles the purchaser to sue for the damages from delay arising from the breach of the provisions as to the time of conveyance; in such a case, the acceptance of the deed when it is tendered does not preclude the action. Delay in executing a valid conveyance does not entitle the purchaser to damages, however, when it is occasioned by the mutual mistake of everyone concerned as to the sufficiency of an invalid deed tendered and accepted at the proper time for performance."

Also see Warner v. Bacon, 8 Gray (Mass.) 397, 69 Am.Dec. 253.

There are a number of cases holding that after a contract has been breached the right to damages therefor is not waived or surrendered because the parties subsequently entered into a new contract covering the same subject. The principle applies here. We call attention to the following cases:

In Luckey v. St. Louis & S. F. R. Co., 133 Mo.App. 589, 113 S.W. 703, the shipper

claimed he had an oral contract with the railway company to ship his strawberries in a refrigerator car. This was not done, because of which the strawberries were damaged. The railway company claimed that the oral agreement had merged into a written contract in which there was no such agreement. The court said: "A written contract of affreightment, under the terms of which the transportation was effected, was introduced in evidence; but it is not contended by defendant, nor do we find, that it contains an agreement on the part of plaintiff waiving the damages he claims accrued under the prior oral contract alleged. In such cases, the rule is well settled that 'if damages have accrued under a verbal contract, and there is no waiver or disclaimer of such breach in the subsequent writing, an action may be maintained on the verbal agreement, notwithstanding there was a subsequent writing.'"

Hoover v. St. Louis & S. F. R. Co., 113 Mo.App. 688, 88 S.W. 769, 770, was a case of shipment of livestock, which was damaged by delay. No written contract was signed at the time of shipment, but a written contract was signed on the way, in which the shipper waived damages by reason of delay in shipment. The court stated: "After an examination of the authorities presented by the respective counsel, we understand the law, where there is a verbal contract and a subsequent written contract, to be this: If damages have accrued under a verbal contract, and there is no waiver or disclaimer of such breach in the subsequent writing, an action may be maintained on the verbal agreement, notwithstanding there was a subsequent writing. But if the subsequent agreement contains among its stipulations that any breach of the verbal contract relating to the shipments is waived, thereby evincing an intention on the part of the contracting parties to regard the writing as covering the whole shipment, and determining their rights arising by reason of such shipment, no action can be maintained on the verbal agreement."

In Garfield, etc., Co. v. Fitchburg R. Co., 166 Mass. 119, 44 N.E. 119, 120, it was said: "It is suggested that the plaintiff waived its rights by allowing its vessels to be discharged at a later time. No doubt, cases occur in which parties going on with a contract after the time stipulated for performance show by their acts that they have modified the contract and enlarged the time. But a contractor, by taking what he can get under his contract when he can get it, no more necessarily, and as matter of law, waives a claim for damages for failure to perform on time, than he necessarily waives a defect of quality by accepting goods."

In Phillips, etc., Construction Co. v. Seymour, 91 U.S. 646, 651, 23 L.Ed. 341, the court held that where the owner urges a builder who has defaulted as to time in constructing a building to complete it, and pays him for part of his work after such failure, he waives strict performance as to time and the builder may recover for the work actually done, though liable in damages for delay. In this case the court said:

"If the builder has done a large and valuable part of the work, but yet has failed to

complete the whole or any specific part of the building or structure within the time limited by his covenant, the other party, when that time arrives, has the option of abandoning the contract for such failure, or of permitting the party in default to go on. If he abandons the contract, and notifies the other party, the failing contractor cannot recover on the covenant, because he cannot make or prove the necessary allegation of performance on his own part. What remedy he may have in assumpsit for work and labor done, materials furnished, etc., we need not inquire here; but if the other party says to him, 'I prefer you should finish your work,' or should impliedly say so by standing by and permitting it to be done, then he so far waives absolute performance as to consent to be liable on his covenant for the contract price of the work when completed.

"For the injury done to him by the broken covenant of the other side, he may recover in a suit on the contract to perform within time; or, if he wait to be sued, he may recoup the damages thus sustained in reduction of the sum due by contract price for the completed work."

The facts in El Paso & S. W. R. Co. v. Harris & Liebman (Tex.Civ.App.) 110 S.W. 145, 146, 148, were: Appellant employed appellee to perform services and breached the contract to appellee's damage. After such breach a new contract was made between them regarding the same subject-matter. Appellee sued for the breach. The defense was that the earlier oral contract was merged into a subsequent written contract. It is stated in the opinion: "The position assumed by appellant that the verbal contract was merged into the written contract, and that appellees could not therefore recover for the breach of the verbal contract theretofore made, is not tenable. The verbal contract was to the effect that appellees should go to Arizona and begin work at once, and appellant failed to comply with that agreement. The verbal contract was in full force and effect until it was superseded by the written contract. That is what is held in Jones v. Risley, 91 Tex. 1, 32 S.W. 1027, cited by appellant. The damages claimed by appellees arose during the life of the verbal contract, and nothing is claimed for anything that transpired after the execution of the written contract. The verbal contract was in full force, however, until the written contract was executed, and appellees' claim is based upon a breach of the oral contract."

Also see Fountain et al. v. Wabash R. Co., 114 Mo.App. 676, 90 S.W. 393.

There are certain cases involving the sale and delivery of personal property in which it is held that the acceptance of the property after the agreed date of delivery did not waive damages caused by such delay. The principle involved is that in accepting performance the buyer did not waive damages he had suffered from the seller's delay in delivery. We think the rule applies as well in cases of sale of real estate.

It was held in Ruff v. Rinaldo, 55 N.Y. 664, that a person permitting the completion of the performance of a contract after the time had expired does not therefore forfeit

his right to damages for the breach of the contract as to time. This seems to be the general rule.

Also see Redlands, etc., Ass'n v. Gorman, 161 Mo. 203, 61 S.W. 820, 54 L.R.A. 718, and note; Johnson et al. v. North Baltimore, etc., Co., 74 Kan. 762, 88 P. 52, 7 L.R.A. (N.S.) 1114, 11 Ann.Cas. 505; Johnson v. Henry, 127 Mich. 548, 86 N.W. 1027; Lawrence County v. Stewart Bros., 72 Ark. 525, 81 S.W. 1059; Huntsville Elks Club v. Garrity-Hahn Bldg. Co. et al., 176 Ala. 128, 57 So. 750; Bryson v. McCone, 121 Cal. 153, 53 P. 637.

We conclude: (1) A stipulation, in a preliminary contract for the sale of real estate, to deliver a deed at a specified time upon a contingency fully performed, does not necessarily merge in a subsequently delivered and accepted deed. (2) Damages occasioned by reason of the breach of a stipulation in a preliminary contract for the sale of real estate, to deliver a deed at a specified time upon a contingency fully performed, are not waived or surrendered merely by the delivery and acceptance of a deed to the real estate to be conveyed.

Under the allegations of fact in the answer and cross-bill (taken as admitted by the demurrer), no rights, under the stipulation in question contained in the preliminary contract, were waived or surrendered, but still exist.

It is unnecessary to decide whether appellee was required under the terms of the contract to deed the property to the Brennons. Assuming that it was not, its attitude misled appellant, who, no doubt, would have demanded performance earlier except for the agreement on the part of appellee to deed the property to the Brennons. This may be considered in determining what was a reasonable time in which to deliver the deed after demand.

The case will be reversed and remanded, with instructions to overrule the demurrer to the answer and cross-complaint, permit amendments of pleading, and otherwise proceed with the trial of the case not inconsistent with this opinion.

It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.