Argued January 5, affirmed February 16, rehearing denied March 23, 1926.

# BOOTH-KELLY LUMBER COMPANY *v.* OREGON AND CALIFORNIA RAILROAD COMPANY.

### (243 Pac. 773.)

**Vendor and Purchaser—Execution of Deed and Payment of Final Installment of Purchase Price Held not "Mutual and Concurrent Acts."**

1. Execution of deed and payment of final installment of purchase price, in contract for sale of land, *held* not "mutual and concurrent acts," where, under terms of contract, final payment was to precede execution of deed by at least thirty days.

**Public Lands—Contract for Purchase of Railroad Lands Calling for Complete Title Held not Satisfied by Execution of Deed Conveying Title Which had to be Perfected (Acts Cong. July 25, 1866, April 10, 1869, April 30, 1908, and August 20, 1912).**

2. Contract for purchase of land granted railroad under act of Congress of July 25, 1866, as amended by act of Congress of April 10, 1869, calling for complete title, *held* not satisfied by execution of a deed conveying title, to perfect which purchaser was required to pay additional amount to United States, under acts of Congress of April 30, 1908, and August 20, 1912.

---

1. Necessity of tender of deed in action for purchase price when payment is to precede conveyance, see note in 35 A. L. R. 120. See, also, 27 R. C. L. 457.

Appeal and Error.

3. Where cause is tried without a jury, trial court's findings have same force and effect as verdict.

Appeal and Error.

4. Reviewing tribunal is unauthorized to disturb findings in case tried without a jury when supported by competent testimony.

Appeal and Error.

5. Opinion on former appeal becomes law of case on subsequent appeal.

Appeal and Error, 4 C. J., p. 876, n. 78, p. 877, n. 80, p. 1073, n. 77.
Contracts, 13 C. J., p. 588, n. 55, 58.
Deeds, 18 C. J., p. 271, n. 81.
Judgments, 33 C. J., p. 1169, n. 36.
Public Lands, 32 Cyc., p. 987, n. 88 New.

From Multnomah: ROBERT TUCKER, Judge.

In Banc.

A judgment was entered in the Circuit Court in favor of plaintiff and against defendant for the recovery of the sum of $48,209.28. Defendant appeals.

On December 21, 1901, the assignor of the plaintiff and the defendant entered upon a contract, which was supplemented by another contract of January 2, 1903, under the terms of which the assignor of the plaintiff agreed to buy from the defendant, and the defendant agreed to sell to him, 19,283.71 acres of timber lands at the price of $10 an acre, to be paid, principal and interest, in ten equal annual installments, commencing December 21, 1903. The lands as described in the contract were lands which had been granted by the United States under the acts of Congress approved July 25, 1866 (14 Stat. 239), which was amended by the act of April 10, 1869, in the following respect:

3. See 2 R. C. L. 202.
5. See 2 R. C. L. 223.

"That the lands granted by the act aforesaid shall be sold to actual settlers only, in quantities not greater than one-quarter section to one purchaser, and for a price not exceeding $2.50 per acre."

Patents were issued to defendant by the United States under said acts of Congress prior to December 21, 1901, conveying to the defendant all the lands covered by the contract between the plaintiff and the defendant. These patents were duly recorded in the land records in the counties in Oregon, wherein the land is situated, and contained reference to the act of April 10, 1869, wherein the restrictive covenant limiting the right of the railroad company to sell the lands was contained but made no specific reference to the settlers' clause, so called.

The railroad company made sales of the land granted to it by the United States, under the acts of Congress above mentioned, in violation of the provisions of the act, setting forth the maxima of quantity and price at which said lands were permitted to be sold. Thereafter, on April 30, 1908 (35 Stat. 571), Congress adopted a joint resolution authorizing the attorney general to institute suits for the purpose of enforcing forfeiture in favor of the United States, with respect to the lands included in the two grants. The United States instituted such suits, one of which is designated as No. 3340 (186 Fed. 861), was for the purpose of enforcing a forfeiture against the defendant as to the sold lands remaining the grants exceeding two million acres in quantity. Another suit was brought by the United States against the defendant and these plaintiffs (238 U. S. 393, 59 L. Ed. 1360, 35 Sup. Ct. Rep. 908, see, also, Rose's U. S. Notes), in which the United States sought to

enforce a forfeiture as to the particular lands covered by the contract involved herein.

Pending the determination of either of these cases brought by the United States, Congress, by act approved August 20, 1912 (37 Stat. 320), authorized the attorney general to enter into a compromise with any purchaser of the granted lands against whom suit had been brought, upon the condition that such compromise should require the entry of a decree of forfeiture against the purchaser, and that within six months from the entry of such decree the purchaser should be entitled to receive a patent from the United States conveying the interest of the United States in the land on the payment by the purchaser to the United States of the sum of $2.50 an acre.

The plaintiff effected a compromise with the United States in pursuance of the provision of the act of August 20, 1912, and received a patent from it upon the payment to it of the sum of $48,209.28, which it seeks to recover in this action and for which judgment in its favor was entered in the Circuit Court.

A demurrer was interposed to the complaint, and in support of this demurrer the defendant advanced the contention that the contract was illegal and unenforceable, in which contention it was upheld by the Circuit Court. In the complaint the plaintiff sought to recover the entire sum of $10 per acre which it had paid to the railroad company, upon the theory that the contract was a nullity, and that the plaintiff received nothing from the railroad company. The Circuit Court adopted the view of the railroad company as to the illegality of the contract and rejected the contention advanced in the Hammond and Winton case, that recovery might be had

of the $2.50 an acre paid to the United States, and the contention advanced in this case that recovery might be had of the entire $10 an acre paid to the railroad company.

On the first appeal of this case, which is reported in 98 Or. 21 (193 Pac. 463), this court reversed the judgment of the lower court, overruled the demurrer of the defendant, held that the Booth-Kelly Lumber Company was not in equal fault with the railroad company, rejected the contention of the Booth-Kelly Lumber Company that it was entitled to recover $10 an acre, and further held that, upon the facts alleged in the complaint, it is entitled to recover the sum of $2.50 per acre paid to the United States to perfect its title to the lands purchased by the railroad.

A more extended discussion of the law of the case is to be found in an opinion of this court in the case of *Hammond and Winton* v. *Oregon & Cal. R. R. Co.,* 98 Or. 1 (193 Pac. 457). After the case was remanded, issue was joined by answer in which several defenses were interposed, which were rejected by the Circuit Court upon the trial and which the defendant now seeks to have reviewed by this court.

The substance of the complaint is set forth in the former opinion of this court, commencing at page 22 of 98 Or. (193 Pac. 463), and a synopsis of the several defenses interposed by defendant are set forth in an opinion of this court in the case of *Hammond and Winton* v. *Oregon & Cal. R. R. Co.,* this day rendered, and need not be repeated here.

AFFIRMED.

For appellant there was a brief over the name of *Mr. Ben C. Dey,* with an oral argument by *Mr. Alfred A. Hampson.*

For respondent there was a brief over the name of *Mr. Mark Norris,* with an oral argument by *Mr. Glenn E. Husted.*

*Mr. S. W. Williams,* Special Assistant to the United States Attorney General, *Amicus Curiae,* in behalf of the United States.

BEAN, J.—There is one defense which is contended for in the case at bar, which was not presented in the Hammond and Winton case. This is denominated the second defense and sets forth that when the plaintiff had completed the performance of the obligations resting upon it by the payment of the moneys due to the defendant, it demanded of the defendant the execution of a deed, surrendered to the defendant the contract which forms the subject matter of this action, and that the defendant executed and delivered to plaintiff a deed in fulfillment of the obligations of the contract, which deed was accepted by the plaintiff in discharge thereof, and by it duly recorded in the Record of Deeds of the county of Lane, State of Oregon.

The defendant submits as the salient facts relating to the defense of the delivery of the deed, the following:

The contract which forms the subject matter of this action, among other things, required the payment of ten annual installments of principal and interest in advance, on deferred installments. The title of the defendant to the lands covered by the contract was not subject to serious attack until the year 1908. It was made the matter of specific attack by the United States by a bill of complaint filed by the United States on the twenty-third day of Janu-

ary, 1909, in which this plaintiff and this defendant were joined as defendants.

Subsequent to the filing of this bill, the plaintiff made payments on account of the principal sum due under the contract on December 20, 1909, December 17, 1910, and December 19, 1911. Each of these payments was accompanied by a written declaration that the payment so made was not a waiver of any of the rights of the Booth-Kelly Lumber Company, under the contract. Such written reservation was not made in connection with the final payment due December 21, 1912. But little progress was made in the litigation instituted by the United States against this plaintiff and this defendant until 1912. It appears that the Booth-Kelly Lumber Company, and others similarly situated, deemed themselves prejudiced by this inaction on the part of the government in the suits brought against them, which resulted in an inability on their part to carry on their lumber enterprise. Remedial legislation was sought from Congress and finally enacted into a law on August 20, 1921. This act is usually denominated the ''Innocent Purchaser's Act,'' which permitted, under the conditions therein outlined, the plaintiffs to pay to the United States the sum of $2.50 an acre in satisfaction of any claim of the government. This sum it did pay in pursuance of the provisions of that act, and here seeks to recover the same from the defendant.

It is contended by the defendant that the execution and delivery of the deed issued by the grantor, upon the surrender of an executory contract calling for a deed, and reciting upon its face that it is issued for such executory contract, in the absence of fraud or mistake, merges the contract in the deed, and

limits the right of the vendee in the contract and the grantee in the deed to those rights created by the deed. That the facts demonstrate that the plaintiff intended to accept the deed in satisfaction of the contract.

Plaintiff maintains that the deed was only part performance of the contract and cites *Davis* v. *Lee,* 52 Wash. 330 (100 Pac. 752, 132 Am. St. Rep. 973), and *Thompson* v. *Hawley,* 14 Or. 199 (12 Pac. 276). In the Davis-Lee case the defendant agreed to sell, and plaintiff's assignor agreed to purchase, certain real estate for a certain price and upon specified conditions. Upon the payment and full performance by the parties of the second part of the stipulations of the contract, it was agreed that ''the said party of the first part shall make to the said second party, his heirs or assigns, upon request, and upon surrender of this agreement, a quitclaim deed to said premises.'' The conditions of the contract were fully performed by the plaintiff and his assignor. And a quitclaim deed was executed by defendant Lee to Mrs. Davis, but she denied that it was accepted as a discharge of defendant's contract. Just prior to the last payment, plaintiffs were threatened with an action of ejectment. Lee was made a party to the suit. He thereupon notified plaintiffs to pay the balance due ($17.10) or he would forfeit the contract. Plaintiffs accordingly paid the amount, taking a receipt in full and a quitclaim deed. Lee did not defend the action of ejectment but filed a disclaimer.

Plaintiffs assumed to defend the title, but were unsuccessful. After judgment against them they purchased the property from the owner, whereupon they brought the action to recover the purchase price and

costs in the action of ejectment. The syllabus indicates the holding of the court:

"There is an exception to the general rule that an accepted deed merges the contract between the parties, where the vendor had agreed in writing 'to sell' the land and to convey by a quitclaim deed, and, after payment of the purchase price, it was found that he had not title.

"Where a contract for the sale of land stipulated that the vendor 'will sell to' the vendees and that the vendees 'will purchase' the land described, making time of the essence, and provided for a forfeiture in case of nonpayment, and that upon full payment and request, the vendor 'shall make * * a quitclaim deed to said premises,' the vendor has obligated himself both 'to sell' the land and to make the deed, and the execution of a quitclaim deed without having title to the land, does not absolve him from his obligation 'to sell'; in which case the vendee can recover the purchase money paid."

The court said:

"The rights and obligations of the parties cannot be measured by the deed alone. The contract is entitled to equal consideration. 'It is not the ordinary case of the breach of a covenant in a deed, where the remedy would be a suit on the warranty, but the respective contracts here are dependent upon each other.' "

In the case of *Read* v. *Loftus*, 82 Kan. 485 (108 Pac. 850, 31 L. R. A. (N. S.) 457) the syllabus reads:

"Whether a stipulation in a contract for the sale and conveyance of real estate, to deliver at a future date an abstract showing good title, satisfactory to the attorney for the vendee, is merged in a warranty deed and mortgage given for the purchase money, executed contemporaneously with the contract, is a question to be determined by an examination of the instruments, and the situation, conduct, and intention of the parties."

The question as to when a vendee will be deemed to have accepted a conveyance as being in performance of an executory contract to convey is thoroughly discussed in a note to the later case in 31 L. R. A. (N. S.). It is stated by the learned editor in the conclusion to the note at page 463, as follows:

"In conclusion it may be remarked that, in the absence of fraud or mistake, the test as to whether prior agreements relating to title merge in a subsequently executed conveyance is the fact of acceptance by the vendee as in full performance by the vendor of his executory contract. Upon such acceptance, the stipulations in the executory agreement, unless collateral thereto, merge in the conveyance without reference to whether it covers the same ground in whole or in part, or whether it is entirely silent upon the subject. * *

"The serious question in the ordinary case, however, is the nature of the vendee's acceptance, whether as in full performance or only performance *pro tanto.* * *

"Nearly, if not all, the cases may be reconciled on the theory that acceptance by the vendee of a conveyance as in full performance by the vendor of his executory agreement merges prior stipulations of title. Whether acceptance by the vendee is in full performance or only in partial performance is a question of intention, to be determined, first, from the instruments executed, and if they are ambiguous on this point, then from extrinsic proof, the burden being on the vendor to establish his contention that the vendee accepted the conveyance in full performance of the prior executory agreement."

1. By the terms of the contract the final payment was to precede, for at least thirty days, the execution of the deed. They were not to be, and were not in fact, mutual and concurrent facts: *Walker* v. *Hewitt,* 109 Or. 366, 379 (220 Pac. 147, 35 A. L. R. 100). Performance by the defendant, when the final pay-

ments were made and such performance was due, was impossible. There was then a breach of its contract or obligation. After breach such an obligation can be discharged only by an express release for a new consideration.

In 13 C. J. 588, Section 594, we read:

"A contract may be discharged at any time before the performance is due by a new agreement with the effect of altering the terms of the original agreement or of rescinding it altogether. * * After breach a contract, whether verbal or written, or under seal, * * or by an agreement operating as an accord and satisfaction."

In Broom's Legal Maxims (9 ed.), 566, the rule is stated thus:

"It is competent for both parties to an executory contract, by mutual agreement, without any satisfaction, to discharge the obligation of that contract. But an executed contract cannot be discharged, except by release under seal, or by performance of the obligation."

At the most the deed gave the plaintiffs $2.50 per acre less than the contract called for. The purchase price, which is asserted to be the market value, being $10 an acre, the deed conveyed no more than three-fourths interest in the land. Later the plaintiff for a sum equivalent to the other one-fourth thereof ($2.50 an acre) was obliged to buy of the United States its paramount title to or interest in the land.

The deed contains no covenant or warranty of title and, therefore, no cause of action arises under it. The contract did not provide that the deed should contain any such covenant or warranty. Therefore, the plaintiff could not have insisted that any such covenant be inserted therein. It conveyed whatever

interest the defendant had, but it gave the plaintiff only part of what it had paid for and was entitled to receive.  The contract itself did not stipulate or contemplate that a mere deed was to be complete fulfillment thereof.  It called for a complete title. The obligation of the defendant was not merely to make a deed, but to convey the land.

Such a deed from its nature is adapted merely to transfer title pursuant to the agreement which it does not profess to show.  Very naturally, as in this case, it is but a part execution of the contract. Its purpose is merely to convey.  Its function is to transfer title, not to express the agreement of the parties.  Whether that transfer be all or only part of what the contract calls for, is another question: *Lynch* v. *Moser,* 72 Conn. 714, 719 (46 Atl. 153); *Collins* v. *Tillou,* 26 Conn. 368, 373 (68 Am. Dec. 398); *Green* v. *Batson,* 71 Wis. 54 (36 N. W. 849, 5 Am. St. Rep. 194); *Saville* v. *Chalmers,* 76 Iowa, 326 (41 N. W. 30).

In *Collins* v. *Tillou, supra,* Mr. Justice ELLSWORTH said:

"The contract in dispute was made before the deed, and not in it or by it.  The deed only follows up the contract by carrying it into execution, and is both subsequent to and in pursuance of it.  It is absolute in its form and effect, because it was intended to be so, and could not be otherwise * * .  It has repeatedly been held that a bill of sale of goods is the vendor's execution of the executory contract of sale; the language of the vendor, not of the vendee. The terms of payment, the counterpart of the sale, are not usually, nor of necessity, a part of the bill of sale.  The same is true of a deed of land; it is not the language of the grantee but of the grantor."

In *Green* v. *Batson, supra,* the court said:

117 Or.—29

"Preceding the conveyance, there is, of course, always an agreement of sale. The deed may contain a very small part of such contract. The deed is made only in execution of the contract. It does not attempt to state the entire agreement in respect to the subject matter, but is merely adapted to transfer the title in part execution of the contract, and is manifestly incomplete."

In *Cavanaugh* v. *Castleman, etc.*, 88 Cal. 543 (26 Pac. 515, 518), at page 552, it was held that the obligation of such a contract is not satisfied by the delivery and acceptance of a deed of a part only of the land, and this is the well-settled rule in such cases. The court said:

"The contention of the plaintiff that the contract was merged in the deed is also untenable. The plaintiff, by the execution of the contract of May 16, had a valid obligation against the defendant for the conveyance of a tract of land. That obligation could not be satisfied by the conveyance of a part of the tract, any more than would the payment of a money obligation be satisfied by the payment of a part thereof. Whether conveyance of a part was made with or without controversy between the parties is immaterial. Unless it was accepted in satisfaction of the agreement, the unexecuted part of the original agreement remained in full force. An agreement for the conveyance of 100 acres of land, except by an agreement between the parties, cannot be satisfied by a conveyance of 50 acres."

To the same effect, see *Brown* v. *Moorhead,* 8 Serg. & R. (Pa.) 569, where the deed was of one tract only and the vendor had agreed to convey two tracts.

2. This case is governed by the same principle. There can be no distinction in principle between the acceptance of a deed which conveys a complete title to only a part of the land and the acceptance of a deed which conveys only a partial title to all of the

land. In other words there can be no difference between the case where the title of the vendor is deficient in quantity and that in which it is defective in quality. There the defect was one of quantity; here it relates to the quality of the estate conveyed.

In *Wilson* v. *Wilson,* 115 Mo. App. 641 (92 S. W. 145), the plaintiff also had fully performed making payment in certain personal property. The deed made and accepted expressly provided that it conveyed "subject to an encumbrance of $4,000 and unpaid commission on said loan." The purchaser afterwards paid the encumbrance and sought to recover of the vendor the amount thereof in excess of $4,000, which was all that, by the contract, he had to assume. The court (p. 650) said:

"The contract contemplated that defendant should receive this personal property * * before the obligation devolved upon him to convey the real estate * * . To state it differently, plaintiff, was, in effect, required to place himself in the position of a creditor of defendant to the extent of the value of the merchandise delivered before the defendant was bound to discharge * * by the delivery of the title. * * It would be a perversion of the doctrine of merger and require an interpretation thereof not sustained by any of the authorities, to which we have been cited, to hold it applicable in this case. * *

"This requirement could not be abrogated except by the express agreement of plaintiff based upon a sufficient consideration, neither of which appears. When the deed was tendered, defendant was in full enjoyment of the fruits of the contract. * * The concession that he thinks he wrung from plaintiff under such hard conditions must fail for lack of consideration, if for no other reasons. The extent of his obligation became fixed by plaintiff's performance and could not be lessened without a new

consideration. When a contract is fully performed by one of the parties, an offer of part performance by the other is no consideration for the waiver of full performance.''

In 27 R. C. L., page 532, Section 264, the general rule is laid down as follows:

''Where there are stipulations in the preliminary contract of which the conveyance itself is not a performance, the true question must be whether the parties have intentionally surrendered those stipulations. The evidence of that intention may exist in or out of the deed. If plainly expressed in the very terms of the deed, the evidence will be decisive. If not so expressed, the question is open to other evidence, and in the absence of all proof there is no presumption that either party in giving or accepting the conveyance, intends to give up the benefit of covenants of which the conveyance is not a performance or satisfaction.''

And in 27 R. C. L., page 530, Section 261, it is said:

''In pursuance of these principles, if the deed is not accepted as a performance by the vendor, the purchaser may still resort to the executory contract for relief if the title fails; it would be otherwise, however, if in fact the acceptance was as and for a full performance by the vendor.''

See, also, *Sessa* v. *Arthur*, 183 Mass. 230, 231 (66 N. E. 804); *Reed* v. *Sycks*, 27 Ohio St. 285; *Morris* v. *Witcher*, 20 N. Y. 41, 47; *Alexander* v. *Greacen*, 36 Misc. Rep. 526 (73 N. Y. Supp. 1001); *Disbrow* v. *Harris*, 122 N. Y. 362, 365 (25 N. E. 356); *Murdock* v. *Gilchrist*, 52 N. Y. 242; *German Am. R. E. Co.* v. *Starke*, 84 Hun, 430 (32 N. Y. Supp. 403); *Smith* v. *Holbrook*, 82 N. Y. 562. In *Van Hee* v. *Rickman*, 109 Or. 357, at page 361 (220 Pac. 143), Mr. Justice McCourt records the following language:

"The memorandum of agreement subscribed by defendant required the latter: (1) To make a conveyance, and (2) To pay in full the cost of the sidewalk and curb theretofore constructed in front of the property. Defendant performed the first of such undertakings, but did not perform the second, either in whole or in part, but she now claims that the performance of the first of such obligations satisfies both. * *

"In that situation, the conveyance itself did not constitute performance of the covenant to pay for the sidewalk and curb and plaintiff cannot be deemed to have surrendered the benefits of that provision of the prior contract, unless the evidence shows that plaintiff, upon accepting the deed, intended to give up those benefits."

3. The issue in these cases at bar are not as complicated as the lengthy history of the transaction would suggest. There is involved the plain question of whether defendant shall be required to comply with its contract or not. The cause was tried by the court without the intervention of a jury. Therefore, the findings of fact made by the trial court have the same force and effect as the verdict of a jury. There is substantial testimony in the case at bar in support of such findings.

The trial court found, among other things, that at the dates of the contract and the assignments thereof, John F. Kelly and John W. Blodgett in good faith believed the defendant owned an unencumbered and unrestricted estate in fee simple in all of the lands embraced in the contract with full power and lawful authority to sell, contract for the sale of, and convey such an estate therein, in accordance with the terms of the contract; that at said dates the defendant knew and for a long time prior thereto it had known of the provisions of said act of Congress

of April 10, 1869, and it did not reveal that knowledge to, but concealed it from, John F. Kelly, John W. Blodgett and the plaintiff, who until December, 1906, were each and all without any actual knowledge or information whatsoever of any of the provisions of said act of Congress.

The testimony tended to show and the Circuit Court further found, in effect, that the defendant did not deliver the deed of the land to plaintiff in performance, satisfaction, execution or discharge of any of its obligations to the plaintiff under the contract.

"That the plaintiff did not, by receiving and recording that instrument, or otherwise, in any manner accept or intend, or agree to accept, that instrument, or the delivery thereof, as in performance, satisfaction, execution, discharge or extinguishment of, or in substitution for, or waive, surrender or intend or agree to waive or surrender, all or any of its rights, claims or demands against the defendant or the obligations of the defendant to it then existing or thereafter to arise under or by virtue of the contract which forms the subject matter of this action, or release or intend to agree to release the defendant from any of its obligations, or receive any value or consideration for any such acceptance, substitution, surrender, waiver or release thereof."

4. Being supported by competent testimony, we have no authority to disturb the findings. The findings made by the trial court support the judgment. We formerly held that the allegations of the complaint were sufficient to constitute a cause of action. We adhere to the former ruling.

5. In mentioning the issues and questions involved in these cases, it is not intended to change or modify, in any way, the former opinion of this court upon

the demurrer, or to consider the case at large upon this second appeal. The opinion in the former case is the law of each individual case upon this appeal in so far as announced upon the first appeal. The questions covered in the opinion in *Hammond and Winton* v. *Oregon & Cal. R. R. Co., ante,* p. 244 (243 Pac. 767), need not be repeated or discussed here.

It is not contended in either of these cases that the amount paid by each plaintiff to obtain the interest of the United States in the land was not reasonable and fair. The amounts were necessarily paid by each plaintiff. The judgment of the Circuit Court is affirmed.                                                   AFFIRMED.

BROWN and COSHOW, JJ., did not sit in this case.

BURNETT, J., concurs in the result.

RAND, J., dissents.