Argued December 13, 1929; affirmed July 1; rehearing denied
October 14, 1930

CITY OF BEND *v.* TITLE & TRUST CO.

(289 P. 1044)

*R. B. Parsons* of Bend and *A. E. Clark* of Portland (Clark & Clark of Portland on the brief) for appellant.

*Earl C. Bronaugh* of Portland (Bronaugh & Bronaugh, Oswald West, and Denton G. Burdick, all of Portland, on the brief) for respondent.

ROSSMAN, J. Some time prior to the year 1925 the city of Bend became desirous of securing a supply of water for municipal purposes out of the flow of Tumalo creek. Since all of the water of that stream had already been appropriated by others the officials of the city proposed to secure water from the Deschutes river and trade it for the desired quantity from Tumalo creek. January 29, 1925, the city and the defendant executed the following contract:

"Whereas, the party of the first part is desirous of securing at least eleven (11) second feet of water from

the direct perennial flow of Tumalo creek for municipal purposes, and

"Whereas, the Tumalo water so desired by the first party has been heretofore appropriated for irrigation purposes, and

"Whereas, it is necessary that other water which may be exchanged for said Tumalo water and used for said irrigation purposes be acquired by first party, and

"Whereas, the party of the second part holds title to thirty-three (33) second feet of the direct flow waters of the Deschutes river, said right being based upon what is commonly known as the Drake filing; and

"Whereas, the party of the second part is willing to dispose of said water;

"Now, therefore, in consideration of the provisions and conditions herein contained it is mutually agreed as follows:

"First. The party of the second part agrees to sell and the party of the first part agrees to buy, for the sum of Fifteen Thousand Dollars ($15,000), eleven (11) second feet of the perennial direct flow waters of the Deschutes river, said payment to be made as hereinafter provided.

"Second. The party of the first part shall pay for said water in cash, solely from funds derived from a bond issue to be voted by the people for the installation of a municipal water system for the city of Bend; it being understood and agreed that the first party shall be under no obligation to purchase said water in case said bond issue is not approved by the voters.

"Third. In the event said bond issue is approved by the voters, the purchase price of said eleven (11) second feet of water shall be due and payable whenever the party of the second part shall convey to the party of the first part an unencumbered title to the perpetual right to the use of said eleven (11) second feet of the direct flow of the waters of Deschutes

river; together with a conveyance from the North Canal company, warranting the right of the party of the first part to the perpetual use of the said eleven (11) second feet of the direct perennial flow of Deschutes river of priority date October 31, 1900, delivery and measurement to be made at the intake on Deschutes river of the Deschutes County Municipal Improvement district, at or near the city of Bend, Oregon; it being understood and agreed that the first party shall receive an unqualified, unencumbered right to the perpetual use of eleven (11) second feet of the direct perennial flow of Deschutes river of priority date October 31, 1900.  *  *  *

"Fifth. It is further understood and agreed that legislative authority is necessary before the proposed exchange of water can be made, and that if senate bill No. 65 in its present form be not enacted as a law during the present session of the legislature, then both parties shall be relieved of any obligation herein set forth.  *  *  *"

The 1925 legislative assembly enacted chapter 53, Laws 1925, which provided "that whenever the city *  *  * shall have acquired the right to appropriate or use from the Deschutes river at least eleven cubic feet per second of water for delivery into the feed canal belonging to Deschutes County Municipal Improvement district *  *  * said city shall be *  *  * authorized to take from the direct flow of Tumalo creek *  *  * not to exceed eleven cubic feet per second of water for the purpose of providing a supply of water for domestic and municipal purposes. *  *  *" The bond issue, mentioned in the above contract, was authorized by the voters, and on November 9, 1925, the city delivered to the defendant its warrants in the sum of $15,000, which were paid April 7, 1926. November 9, 1925, the defendant delivered to the plaintiff its bargain and sale deed which described as the

subject-matter of the conveyance the water rights mentioned in the contract, and at the same time the plaintiff received an instrument signed by the North Canal company which contained the following warranties:

"And the said North Canal company does covenant with the said city of Bend, Oregon, and its legal representatives forever, that Title and Trust company is lawfully seized in fee simple of the above described and granted premises, and has a valid right to convey same; that the said water is free from all incumbrances, and that North Canal company will and its successors shall warrant and defend the title to said water and the perpetual use thereof with a priority as of October 31, 1900, to the said city of Bend, Oregon, its successors, assigns forever, against the lawful claims and demands of all persons whomsoever."

The plaintiff has not questioned the financial responsibility of the North Canal company. After the city's transaction with the defendant it purchased from others a supply of water from the flow of Tumalo creek. These circumstances lead us to infer that the city's failure to resort to the warranties executed by the North Canal company was not due to any lack of financial worth of the latter.

Before the above instruments were delivered to the city both had been submitted to Mr. C. S. Benson, the municipality's attorney, and had been approved by him as to form. In the consummation of this transaction the city had the advice and counsel of the state engineer, as well as that of Mr. Benson. Due to the fact that the state engineer maintained test stations along the course of the Deschutes river in the vicinity of Bend, data had been obtained from which it was possible to determine the quantity of water available for the satisfaction of the rights held by the defen-

dant. The city attorney was especially familiar with the legal status and validity of these rights by reason of the fact that he was one of the attorneys who had participated in the litigation which in the year 1921 culminated in a decree of the circuit court determining the priorities of the various filings for water rights in the Deschutes river. Mr. Benson advised the mayor and city council that in his opinion other individuals, who possessed water rights prior in point of time to those held by the defendant, were entitled to take from the river such large quantities of water that the rights held by the defendant were of doubtful merit. We quote from his testimony the following:

"I advised them against accepting those conveyances as a fulfillment and compliance with that contract * * * and they saw fit to ignore my advice. I am frank in making an acknowledgement, that purported statement on the bottom * * * signed by myself, approves as to form * * * but my position on that was this, I made it plain to the council, that while so far as they went those two exhibits were satisfactory as to form, in this, that they complied with the memorandum of agreement there which had been executed by the city, they were approved to that extent, that is to say, that they carried out the conditions of the memorandum of agreement, to that extent they were approved. But as to being in compliance with either the letter or spirit of that contract, I made no such approval * * * they don't as I told the council there in your presence, that until they showed us that they had a title to convey, a proper title, and such a title as we have stipulated for, I withheld my approval of the issuance of these warrants. * * *"

Before the city received the deeds its officials knew that the Tumalo board would not accept the title which the defendant possessed; in fact, the municipal offi-

cers received that information from the Tumalo board when they attended their first meeting with the latter in April or May of 1925. At subsequent times the Tumalo board voiced objections to the title which the defendant held. After the city obtained the conveyance from the defendant and the warranties of title from the North Canal company it sought to effect an exchange with the Tumalo board but the latter promptly declined to do so for the reasons just indicated. October 22, 1926, almost a year after the defendant made its conveyance to the city, the latter notified the defendant that the title to the water rights mentioned in the deeds was defective and demanded a return of the $15,000. It thus expresses its objections in the complaint:

"There are various other claimants to the direct perennial flow waters of Deschutes river with valid legal rights to the use thereof of priority dates prior to the priority date of the so called Drake filing * * * of which filing the rights purported to be conveyed to the plaintiff by the defendant are part. * * * That at the date of the conveyance of title to said eleven second feet of water by defendant to plaintiff herein, the aggregate amount of water represented by the rights hereinbefore enumerated as superior to said North Canal company's rights in the direct perennial flow of said Deschutes river exceeded the entire direct perennial flow of said river during seasons of low water."

Neither the evidence nor the pleadings charge the defendant, the North Canal company, nor any other person with fraud, concealment, or bad faith.

The answer alleges that the defendant as trustee for the North Canal company held title to thirty-three second-feet of the direct flow of waters of the Deschutes river based upon the Drake filing. Further it

alleges that the plaintiff was aware of the fact that the defendant held title as trustee only, and that it informed the plaintiff, when the transactions mentioned in the complaint were consummated, that it had no knowledge of the validity or status of the water rights. The answer also avers that when the contract was drafted it was agreed that the defendant should make no warranties concerning the title to the water rights, and that it should convey only such title as it held.

It will be observed from the foregoing that the city based this action upon the provisions of the contract, and that the defendant insists that the instrument is no longer available as a predicate for any rights due to the fact that the duties created by it became merged in the deeds subsequently executed. In other words the defendant insists that the latter instruments are the sole evidence available of the rights accruing from this transaction.

It is conceded that the defendant actually held a valid title to eleven second-feet of the direct flow of the Deschutes river based upon a filing known as the Drake filing, the priority date of which is October 31, 1900; the validity of that filing is not questioned. From the evidence we are unable to determine the precise length of time in which no water is available to supply the rights conveyed to the city; it is clear, however, that users of water, whose filings were antecedent to those of Drake, and prior grantees under the Drake filing, exhaust the flow at seasons of low water leaving nothing available to the city.

▮▮▮ Our decisions have recognized and applied the general rule that the delivery and acceptance of a deed, executed pursuant to the provisions of a precedent contract for the sale of real property, may merge the

rights conferred by the contract into it. As defined by this court the rule may be more specifically stated thus: the deed supersedes the contract as to all its provisions made pursuant to the terms of the latter; stipulations in the prior contract, of which the conveyance is not a performance, are likewise superseded if the parties intended to surrender those stipulations. Whether they so intended is a question to be determined from the evidence. The evidence establishing the intention may exist in or out of the deed: *Booth-Kelly Lmbr. Co. v. Ore., etc., R. R. Co.,* 117 Or. 438 (243 P. 773); *Van Hee v. Rickman,* 109 Or. 357 (220 P. 143); *Blake-McFall Co. v. Wilson,* 98 Or. 626 (193 P. 902, 14 A. L. R. 1275); *Winn v. Taylor,* 98 Or. 556 (190 P. 342, 194 P. 857); *Rall v. Purcell,* 131 Or. 19 (281 P. 832). The rule is founded upon the privilege which parties always possess to change their contract obligations by further agreement prior to performance. The execution, delivery and acceptance of a deed varying from a contract may indicate such an amendment of the original contract, and, where it does, the rights of the parties are fixed by their expression as contained in the deed. From Maupin on Marketable Title to Real Estate (3d Ed.), p. 705, we quote:

"If the contract has been executed by a conveyance of the land to the purchaser without general covenants for title, he can, if the title fails, neither recover back the purchase money, nor detain that which remains unpaid, either at law or in equity; unless the vendor was guilty of fraud, or the contract was founded in mistake of the parties as to some fact upon which the title depended."

■ In opposition to the rule just quoted the plaintiff calls to our attention *White v. Murray,* 218 Fed. 933, in which the title to some property in the state of

Pennsylvania was involved. The contract, pursuant to which the deed mentioned in that case was executed, provided that the grantor should convey title by a deed containing warranties of title; the deed delivered contained none. The court held that the contract was not superseded by the deed and granted relief under the former. It is said that "a peculiar doctrine" in regard to the doctrine of merger prevails in Pennsylvania; see Maupin on Marketable Title to Real Estate, p. 716. Hence this case loses much of its force. But there is still another reason why we do not believe that the authority of that case is persuasive in the present instance. It is the fact that the contract before us contains no provision that the defendant's deed should contain assurance of title; to the contrary the stipulations of the contract requiring that the warranty of title should be executed by the canal company indicate that the plaintiff was content to look to that company for the perfection of the title which it was purchasing. The plaintiff apparently believes that statements contained in this court's decision in *Booth-Kelly Lmbr. Co. v. Ore., etc., R. R. Co.* are out of harmony with the rule stated by us at the beginning of the preceding paragraph, and also at variance with the rule stated by Mr. Maupin. In this belief the plaintiff is in error. In *Booth-Kelly Lmbr. Co. v. Ore., etc., R. R. Co.* Mr. Justice BEAN pointed out that in the absence of fraud or mistake the test as to whether prior agreements relating to a conveyance of title merge in the subsequent deed is the fact of acceptance by the vendee of the conveyance as full performance of the contract. In the Booth-Kelly case this court held that the deed was not accepted as performance of the contract. A material circumstance which induced that conclusion was the fact that the purchaser was unaware of limi-

tations upon the title of the vendor expressed in the act of congress pursuant to which the patents had been issued to the railroad company. The recorded patents made no mention of this limitation and the limitation was successfully concealed from the vendee. Thus there was excusable ignorance upon the part of the grantee and concealment upon the part of the grantor. The rights conferred by the precedent contract do not become integrated or merged into the subsequent deed when through fraud or relievable mistake the grantee has been induced to accept something different from what the contract required: 18 C. J. Deeds, § 231, p. 270. Due to the fact that the vendor in the Booth-Kelly case was guilty of concealment and the vendee's acceptance of the deed was explainable by relievable mistake the receipt of the instrument was not tantamount to its acceptance as performance of the contract.

■■ It will be observed that the rule stated by Mr. Maupin includes a situation where the contract requires that the deed of conveyance shall include warranties of title but the deed actually delivered contained none. The facts of our case do not require us to adopt the rule in this broad sense, because the contract between the plaintiff and the defendant did not contemplate that the latter should warrant the title which it undertook to convey. Under these circumstances it will be observed that the contract contained no provision which was not incorporated in the deed. In other words the instruments executed and delivered by the defendant and the North Canal company were of the precise character demanded by the executory contract and when applied to such a contract the rule announced by Mr. Maupin is justified by our previous decisions. When this rule is applied to the facts of this case it is

obvious that the contract is no longer available to the plaintiff as the foundation of this action, provided the evidence establishes that the city accepted the deeds as performance of the contract. When the defendant tendered to the plaintiff the two instruments of conveyance the plaintiff could have declined to receive them and to deliver to the defendant its municipal warrants because of its objections to the vendor's title: *Collins v. Delashmunt,* 6 Or. 51; *Sheehan v. McKinstry,* 105 Or. 473 (210 P. 167, 34 A. L. R. 1315); *Rall v. Purcell,* supra. At that time the city had paid nothing towards the purchase price of the water rights. Instead of taking such a course it received the deeds and delivered its warrants. Five months later, after the Tumalo board had declined to make the exchange the city council ordered payment of the warrants, although the city attorney advised the opposite course. Seven months more elapsed before the plaintiff evidenced any dissatisfaction with its purchase and notified the defendant to that effect. We are convinced that these facts, the force of which is not diminished by any explanatory evidence, establish not only a receipt of the instruments as articles of conveyance but also their acceptance as the performance of the defendant's contract. Such being our conclusion it follows that the contract has been discharged and is no longer available as a foundation for this action.

■ The defendant's deed was one of bargain and sale; it contained no warranties. Its sole service was therefore to act as an instrument of conveyance: *Taggart v. Risley,* 4 Or. 236, and *Keady v. Martin,* 69 Or. 299 (137 P. 856, Ann. Cas. 1916A, 796). Since such was its nature it affords no basis for a recovery of the purchase money: Devlin on Real Estate (3d Ed.) 957.

■ Finally the plaintiff argues that it ought to be permitted to recover this money by the application of the principle of law which declares that when public officers make a payment of public funds pursuant to an illegal contract, or when their action manifestly is unwarranted, the sum paid may be recovered even though no redress could be obtained if the transaction had taken place between private individuals. The rule just stated is recognized in *Grant County v. Sels,* 5 Or. 243, and *Union County v. Hyde,* 26 Or. 24 (37 P. 76). The transaction before us is clearly not illegal nor collusive. All parties were prompted by worthy motives. The action of the city council in ordering payment of the warrants after being advised to the contrary course by its legal adviser does not indicate that its action was unwarranted or even unwise. The evidence indicates that the price which it paid for these water rights was very modest; this circumstance, together with the fact that the title was warranted by the North Canal company, possibly justifies an inference that a private individual actuated by business prudence might have adopted the same course.

It follows from the foregoing that the judgment of the circuit court will be affirmed.

COSHOW, C. J., and RAND, J., concur.