Argued March 12, reversed April 2, 1952

# SMITH *v.* VEHRS

242 P. 2d 586

*George H. Brewster,* of Redmond, argued the cause and filed a brief for appellant.

*James B. Castles,* of Portland, argued the cause for respondent.   With him on the brief was John D. Weed, of Condon.

Before Brand, Chief Justice, and Hay, Lusk, Warner and Tooze, Justices.

494

TOOZE, J.

This is a suit for specific performance of a written contract for the sale and purchase of real property, brought by Loyd E. Smith, as plaintiff, against George F. Vehrs, as defendant. The trial court entered a decree in favor of plaintiff as prayed for in his complaint. Defendant appeals.

On November 28, 1945, defendant, as seller, and plaintiff, as purchaser, entered into the following written agreement:

"THIS AGREEMENT, made at Condon, Oregon, this 28th day of November, 1945, by and between GEORGE F. VEHRS, a single man, hereinafter called the Seller, and LLOYD SMITH, hereinafter called the purchaser.

"WITNESSETH:

"The Seller hereby acknowledges receipt of and from the Purchaser of the sum of Eight Thousand ($8,000.00) Dollars, as earnest money and in part payment for the purchase of the following described real property situated in the County of Gilliam and State of Oregon:

"2964 acres, more or less, in Township 5, South, Range 21 East of the Willamette Meridian, in said county and state;

which the Seller hereby sells to the Purchaser for the sum of Fifty-five Thousand ($55,000.00) Dollars, on the following terms:

"Eight thousand (8,000.00[)] dollars as hereinabove receipted for;

"The assumption of and agreement to pay by the Purchaser of the certain mortgage to The Federal Land Bank of Spokane now encumbering said premises

"The remainder of said purchase price to be paid in two installments, the first of which is

to be made on the 10th day of January, 1946, and the second of which is to be made on the 15th day of October, 1947; the amounts of which said installments is to be mutually agreed upon by the Seller and the Purchaser on or before the said 10th day of January, 1946;

"The deferred payments shall bear interest at the rate of four (4%) per centum per annum from the date of the first of said payments;

"This agreement contemplates that on or about the 10th day of January, 1946, the Seller and the Purchaser shall mutually ascertain and determine the amounts of the payments above specified, whereupon the parties shall execute and deliver such instruments and documents as shall be necessary to effectuate and evidence the sale and purchase herein provided.

"The Seller agrees to furnish to the Purchaser on or before the 1st day of January, 1946, abstracts of title to said real property continued to a current date, showing a good and merchantable title in fee simple in the Seller, subject only to (a) reservations contained in patents and in deeds from the State of Oregon; (b) conveyances for the purpose of the establishment of roads and highways; and (c) said mortgage to the Federal Land Bank of Spokane.

"It is understood and agreed that a portion of said premises is subject to a lease dated September 5, 1941, made by the Seller, as lessor, to W. H. Bottemiller, as lessee, and which said lease expires on the 1st day of October, 1946, and that the lessee's interest in said lease and premises is now owned by Lloyd Turney, and the Seller hereby agrees to assign and transfer said lease to the Purchaser as a part of this purchase and sale, and the Purchaser agrees to purchase and accept said real property, subject also to the terms, agreements and provisions of said lease agreement.

"It is further understood and agreed by and between the parties that the Seller shall have the right and privilege until the 1st day of June, 1946,

to remain in possession of said premises for the purposes of his livestock operations, but such operations are not to obstruct or interfere with the farming operations of the Purchaser, who shall be entitled to the possession of the cultivated lands on and after the date of the first of the installment payments hereinabove provided.

"The Purchaser agrees to reimburse the Seller on the 10th day of January, 1946, for one-half of the amount which the Seller has paid to Gilliam County for the taxes for the fiscal year 1945-46.

"It is agreed that, if title to the said premises is not good and cannot be made good within sixty (60) days from said 10th day of January, 1946, then, and in such event, this agreement shall be void, and the above Eight Thousand ($8,000.00) Dollars shall thereupon, be refunded to the Purchaser. If, however, the title to said premises is good in the name of the Seller, or shall be made good within sixty (60) days from said 10th day of January, 1946, and the purchaser shall refuse to accept the same, the said Eight Thousand ($8,000.00) Dollars shall be forfeited to the Seller as liquidated damages. But it is agreed by the parties hereto that such forfeitures shall in no way affect the rights of either party to enforce the specific performance of this agreement.

"This agreement shall bind the heirs, executors and assigns of the parties.

"IN WITNESS WHEREOF, the parties hereunto have set their hands the day and year first above written.

"[Sgd.] George F. Vehrs
Seller
[Sgd.] Loyd E. Smith
Purchaser"

Witnessed:
[Sgd.] Dan P. McLoughlin

On or about January 1, 1946, and pursuant to the contract, defendant delivered to plaintiff an abstract

of title to said premises. Plaintiff caused this abstract to be examined by one Dan P. McLoughlin, an attorney of Condon, Oregon. McLoughlin discovered a defect in the title to a tract of 480 acres of the land involved and reported this defect to plaintiff on or about January 10, 1946. That particular tract of land comprises the real property involved in this litigation, and is described as the east half of section 11, and the northeast quarter of section 14, in township 5 south of range 21 east of the Willamette meridian, in Gilliam county, Oregon.

About January 10, 1946, and also pursuant to the terms of the contract, defendant, as plaintiff, instituted suit against his former wife and her then husband, in the circuit court for Gilliam county, to quiet the title to said 480-acre tract. On March 6, 1946, and within the 60-day period mentioned in said contract, a decree was entered in said suit to quiet title in favor of the plaintiff therein and against the defendants, quieting title in George Vehrs in and to the said tract of land, and the whole thereof. McLoughlin was attorney for Vehrs in said suit.

On or before January 10, 1946, plaintiff, according to his own testimony, was let into possession of the whole of the premises described in the contract, including the 480 acres, for the purpose of doing necessary plowing and other farm work, defendant reserving only a right to run his sheep thereon until June 1, 1946.

On February 21, 1946, at the request of plaintiff, plaintiff and defendant met at the law offices of McLoughlin in Condon, and, thereupon, defendant executed and delivered to plaintiff a warranty deed conveying to plaintiff title in fee simple to 2484 acres of land, being all of the land generally described in said contract except the 480-acre tract above mentioned.

The property conveyed was particularly described in said deed by metes and bounds. The deed contained the usual covenants of a warranty deed. It contained a covenant that the premises were free from all encumbrances except:

" \* \* \* the second half of the 1945-46 taxes, mortgages to Federal Land Bank of Spokane and Land Bank Commissioner the unpaid balances thereof being the sum of $12,570.02, which grantees assume and agree to pay; right of way deeds to Condon, Kinzua & Southern Railroad; areas included within roads and highways; easements for public utilities; reservations in patents from the United States of America and deeds from the State of Oregon; and lease to Lloyd Turney and Frank Selby expiring October 1, 1946."

The consideration stated in the deed is $10, but the actual consideration was $51,000, made up as follows:

Paid by plaintiff upon execution of contract $ 8,000.00
Balance of mortgage indebtedness assumed.. 12,570.02
Paid by plaintiff February 21, 1946—cash .... 12,000.00
Note and mortgage from plaintiff to defendant, dated February 21, 1946 ...................... 18,429.98

$51,000.00

The mortgages held by Federal Land Bank of Spokane and Land Bank Commissioner covered all the real property, including the 480-acre tract. The mortgage from plaintiff to defendant covered the 2484 acres only.

In due time, plaintiff paid the indebtedness evidenced by the notes and mortgages to the Federal Land Bank of Spokane, the Land Bank Commissioner, and defendant, thereby completing in full the payment of the purchase price of $51,000.

In this suit plaintiff contends that the execution

by defendant and acceptance by him of the deed to 2484 acres of the land involved on February 21, 1946, was intended only as a partial performance of the contract of November 28, 1945, and that it was agreed that, when the title to the 480-acre tract of land was quieted, defendant would convey said land to him. He claims that he withheld $4,000 of the purchase price agreed upon in the original contract, pending removal of the defect in the title to the 480 acres and the conveyance of said land.

Defendant, to the contrary, insists that the transaction of February 21, 1946, constituted an entirely new agreement between the parties, which was substituted for the original contract, and that the latter agreement was completely executed. He contends that all prior dealings between the parties, including the contract of November 28, were merged in the deed executed February 21. Defendant also maintains that the original contract is so indefinite and uncertain in its terms that it is not subject to specific performance. Defendant raised this latter question by demurrer to the complaint, which was overruled, and by objections to the admission of evidence on the trial, which objections were likewise overruled.

■ It is a well-established rule of law in this state that equity will not decree specific performance unless the contract is definite, certain and complete. The court cannot make a contract for the parties, nor can it make clear that which is left in doubt and uncertainty. *Wurzweiler v. Cox,* 138 Or 110, 113, 5 P2d 699; *Ramsey v. Wellington Co.,* 114 Or 355, 369, 235 P 297; *Kleinschmidt v. Central Trust Co. et al.,* 103 Or 124, 146, 203 P 598; *Feenaughty v. Beall,* 91 Or 654, 667, 178 P 600; *Berry v. Wortham,* 96 Va 87, 30 SE 443.

In *Berry v. Wortham,* supra, at page 89, the court said:

"It is an elementary doctrine of courts of equity that they will not specifically enforce any contract unless it be complete and certain. * * * it must be complete in all its parts; that is, all the terms which the parties have adopted, as portions of their contract, must be finally and definitely settled, and none must be left to be determined by future negotiations; and this is true without any regard to the comparative importance or unimportance of these several terms."

We have not overlooked defendant's contention that the written contract is indefinite and uncertain as to the description of the real property to be conveyed. *Woolsey v. Draper et al.,* 103 Or 103, 110, 201 P 730, 203 P 582. Neither have we failed to pay heed to his claim that the agreement is uncertain and incomplete as to the terms and manner of payment of the purchase price.

However, it is unnecessary for us to decide whether this particular contract is so indefinite and uncertain in its terms as not to be subject to specific performance, because we are of the opinion that, under the evidence in this case, that agreement was completely merged in the deed executed on February 21, 1946, and, therefore, no part of it now exists to form the basis of a decree of specific performance.

It is noted that, at the time the deed was executed and delivered on February 21, no memorandum of any kind was made respecting the 480-acre tract. Plaintiff contends that it was orally agreed that, if and when the title to the 480 acres was cleared, the defendant would convey the same to him, and he would thereupon pay defendant the sum of $4,000. The defendant un-

equivocally denied that there was such an understanding.

The plaintiff testified:

"Q How much of the fifty five thousand dollars recited in the contract was paid by you?

"A Fifty one thousand dollars.

"Q Why was not four thousand dollars, the difference between fifty one and the fifty five, not paid by you?

"A They hadn't cleared the title to call it a merchantable title; they didn't have clear title to it. They said they would get clear title and then transfer the other four hundred and eighty acres. Then that four thousand dollars was to be paid to make the balance of fifty five thousand dollars.

" * * * * *

"Q And that is a copy of the contract that you and Mr. Vehrs entered into?

"A Yes.

"Q Sometime subsequent to that Mr. Vehrs gave you a deed, did he not?

"A For part of the contract, yes.

"Q He gave you a deed, did he not?

"A Yes.

"Q And you accepted the deed, did you?

"A I did.

"Q And you recorded the deed, did you not?

"A I did.

"Q Now how did it happen that you accepted a deed and paid over 51 thousand dollars of the purchase price if you felt that you should still get these 480 acres of land? Why did you accept partial performance?

"A *The reason that I accepted partial performance was the fact that it was time to start plowing in the spring, and we didn't feel like being held up for sixty days or such a matter with our work* and

then have to go ahead and·fulfill this contract. Mr. Vehrs told me to go ahead and farm this and when he got the contract cleared on this other land that he would go ahead and we would finish it up. (Italics ours.)

"Q Did he give you any writing to that effect?

"A No, sir, but my word is good."

The evidence is undisputed that plaintiff was in possession of all the land prior to and ·on February 21, having taken possession early in January, as above stated, for the 'purpose of doing necessary plowing. Therefore, it is obvious that the reason he assigned for accepting what he called "partial performance" of the ·original contract is wholly without foundation in fact.

The record also discloses that for more than two years following February 21, 1946, plaintiff rented the 480 acres from defendant upon a crop-rental basis. Furthermore, during that entire period of more than two years, plaintiff never once inquired of defendant, nor ·of his own attorney, Dan P. McLoughlin, as to the outcome of the quiet-title suit respecting the 480-acre tract. He admitted that he knew of the commencement of the suit in January, 1946, and that McLoughlin was the attorney handling the matter. On the trial he testified:

"Q * * * That for a period of more than three years you didn't take the trouble to go to your attorney, Mr. McLoughlin, and ask him how the quiet-title suit was coming on.

"A I think that is right."

Plaintiff never made any demand upon defendant to convey the 480 acres to him until January, 1949, and then only after he and defendant had had some difficulty in connection with plaintiff's rental thereof.

In 1948, defendant refused to renew the agreement for rental. In connection with that matter, the testimony of plaintiff as to what occurred in 1948 is significant. He testified:

"Q As a matter of fact hadn't Mr. Vehrs told you that you weren't going to get that 480 acres of land?

"A No, he never told me I wasn't going to get it.

"Q Isn't it a fact you and Mr. Vehrs had discussed about it and he told you if you wanted that 480 acres of land you would have to pay nine thousand and you offered him five?

"A No, sir.

"Q If you want to make an explanation, go ahead.

"A I met Mr. Vehrs in Fossil in June, or about the first of June. That would be, I believe, in 1948. Let's see, we harvested the crop in 1947; in the spring of 1948 it would be summer-fallowed, and *the first inkling that I had that he was going to ask more than four thousand dollars was at that time. I asked him if he was going to give us a lease on that, assuming that he hadn't cleared the title, or anything, whether we would go ahead and plow that; and he said he couldn't afford it. I said, George, I would like to clear this thing up, just what would you take? And he said, ten thousand dollars; and I told him that I never would give him over four thousand dollars for it, like I had agreed to.*" (Italics ours.)

It seems pertinent to inquire why plaintiff would ask defendant "just what would you take" for the 480 acres, if, as he now claims, he had an agreement made in February, 1946, that the land was to be conveyed to him when the title was cleared, for the sum of $4,000.

Plaintiff's acts and conduct on and after February 21, 1946, are entirely inconsistent with his present

claim that the deed executed on that date was intended merely as a partial performance of the original contract.

Everything done by the parties on and after that date can be logically explained only upon the basis of a merger of the prior contract into the deed. The record does not disclose the real reasons for plaintiff's insistence that the deal be consummated at that time. As we have before observed, the reason he assigned; viz., ploughing operations, had no foundation in fact. However, we are not required to speculate as to the actual reasons motivating plaintiff, because, in any event, under the record in this case they are unimportant.

■ ■ It is a general rule of law that the delivery and acceptance of a deed executed pursuant to the provisions of a precedent contract for the sale of real property, merges the rights conferred by the contract into it. Any inconsistencies between the terms of a contract of purchase of real property and the terms of the deed are governed by the latter, into which the former are merged. As stated in *Bull v. Willard,* 9 Barb (NY) 641:

> "Contracts for the sale of land are, in their nature, executory; and generally, the acceptance of a deed, in pursuance of a contract, is *prima facie* an execution thereof, and the rights and remedies of the parties are to be determined by the deed."

■ Although the terms of the deed may vary from those contained in the contract, still the deed must be looked to alone to determine the rights of the parties. *City of Bend v. Title & Trust Co.,* 134 Or 119, 126, 289 P 1044, 84 ALR 1001; *Van Hee v. Rickman et al.,* 109 Or 357, 360, 220 P 143; *Winn v. Taylor,* 98 Or 556, 576, 190 P 342, 194 P 857; *Burk v. Brown,* 58 Ind App 410,

108 NE 252; *Farrant v. Troutman,* 42 Okla 418, 141 P 776; *Woodson v. Smith,* 128 Va 652, 104 SE 794.

It also is a rule of law that, where merger of a prior contract into a deed is denied, the burden of proof rests upon the party so denying to show that a merger was not intended. In the instant case plaintiff denies that there was a merger of the original contract into the deed executed and delivered to him. Therefore, upon plaintiff rested the burden of proof to establish his claim. He failed in discharging that burden. *Gray v. Van Gordon,* 187 Iowa 835, 174 NW 588; *Slocum v. Bracy,* 55 Minn 249, 56 NW 826, 43 Am St Rep 499.

Most of the evidence to which we have directed attention in this case was offered by plaintiff. No witnesses, other than the parties themselves, testified to any of the material facts. Neither party called Dan P. McLoughlin as a witness to testify. Considering the part McLoughlin played in preparation and execution of the original contract, in the examination of the abstract of title, in the execution and delivery of the deed, note, and mortgage on February 21, and in the proceeding to quiet title, it is evident that he had knowledge concerning many of the facts in dispute. The record does not disclose any reason for his not being called as a witness. Though neither party was under any special duty to produce McLoughlin as a witness, nevertheless, inasmuch as plaintiff had the burden of proof as to there being no merger of the original contract into the deed, he should have called him to support his claim, if indeed his claim was valid. There was a sharp dispute between the parties as to some of the material facts. Defendant testified directly that the agreement of February 21, culminating in the execution and delivery of the deed, the payment of

$12,000 in cash to him, and the execution of the note and mortgage by plaintiff to evidence the balance of the purchase price, was a new and complete agreement which was substituted for the written contract of November 28, 1945. He denied that he agreed, as a part of the transaction of February 21, to convey the 480-acre tract of land to plaintiff when the title was perfected. However, under all the facts and circumstances of this case, we are convinced that the truth lies with defendant's version of the transaction.

■ This being an equity case, it is tried de novo in this court. Though in all such proceedings the findings of the trial court upon the facts are entitled to great weight, nevertheless, we are not bound thereby. In every such case we are required to make our own independent investigation of the facts as disclosed by the record before us and, based thereon, to arrive at our own ultimate conclusions. The rule adopted that the findings of the trial court are entitled to great weight is one of expediency only. *Meads v. Stott,* 193 Or. 509, 238 P2d 256, 239 P2d 594, 595.

In conclusion, it is our opinion that the record in this case clearly discloses a merger of the contract of November 28, 1945, into the deed executed and delivered on February 21, 1946, and that plaintiff's present claim as made in this suit is manifestly an afterthought. Plaintiff is not entitled to a decree of specific performance.

The decree of the trial court is reversed and this cause remanded with directions to enter a decree in favor of defendant dismissing plaintiff's suit.

Defendant is entitled to costs.